WILLIAM BECK, APPELLANT, v. WILLIAM O'CONNOR
AND WALTER COOPER, RESPONDENTS.

[Submitted May 3, 1898.   Decided May 9, 1898.]

*Rules of Court—Briefs—Mining Lease—Rights of Lessees.*

1. RULES OF COURT—*Briefs.*—An appeal will be dismissed when appellant's brief does not contain a statement of the case, a specification of the errors relied upon, and instructions given or refused upon which error is predicated, as directed in Rule 5.

2. The lessees of a mine, who also had a bond for title to the same, assigned five-sevenths interest in the lease and bond to "O." upon the condition that he should carry out and perform the covenants of the lease and the condition of the bond; afterwards the lessees assigned the remaining two-sevenths of the lease and bond to the plaintiff, who then assigned one-third thereof to the defendants for $4,250, part of which was paid in cash, the remainder to be paid when the defendants could ascertain that the interest which they had bought was free and clear from all liens and incumbrances. "O" did all the work upon the claim required by the lease. *Held,* in an action to recover the remainder of the purchase price, that "O" had a lien upon plaintiff's interest in the property, and that defendants could recover the money which they had advanced to plaintiff as part of the purchase price for his interest.

*Appeal from District Court, Carbon County; Frank Henry, Judge.*

ACTION by William Beck against William O'Connor and another. Judgment for defendants, and plaintiff appeals. Affirmed.

Statement of the case by the justice delivering the opinion.

This is an action to recover the sum of $1,250, which plaintiff claims to be due as a balance of the purchase price of an interest in a bond and lease sold by him to the defendant O'Connor in and to certain mining property mentioned in the complaint.

From the record it appears that on the 24th day of September, 1891, George W. Stapleton and others leased to Henry Addoms and Mark Welch a mining claim in Silver Bow county, known as the "Spur Lode Mining Claim," for the term of one year. By the terms of said lease, the lessees bound themselves and their assigns to take possession of the

leased premises, and work and mine the same in an economic, proper, and miner-like manner, and especially to sink an incline, which had already been sunk on said premises 200 feet, an additional depth of 100 feet, cf the same size as the incline already constructed, and to properly timber the same. It was provided in said lease that the lessees should work the property continuously during the teim of the lease, and that a failure to work it for a period of ten consecutive days should operate as a forfeiture of the lease. The lease also provided that a failure on the part of the lessees to comply with any of the terms or covenants contained therein should work a forfeiture thereof. The lessors, at the time of the execution of the lease, executed to the said Addoms and Welch a bond for a title to the leased property, upon the condition that, the said Addoms and Welch should pay to them the agreed purchase price within the time specified in said bond. Thereafter Addoms and Welch assigned to L. B. Olds an undivided five-sevenths interest in the lease, and in all the estate, right and title acquired thereunder, upon the condition that said Olds comply with the covenants and terms of said lease, and at the same time assigned to said Olds the undivided five-sevenths interest in and to the title bond above mentioned, together with a five-sevenths interest in all rights, title and estate to be acquired thereunder, upon condition that Olds would carry out and perform the conditions of said bond. Olds immediately entered into possession of the leased premises, and commenced to work and mine the same, in accordance with the terms of the lease. Addoms and Welch never did any work on the leased premises. In February, 1892, Addoms and Welch conveyed by quitclaim deed to the plaintiff, William Beck, a two-sevenths interest in and to the lease and bond mentioned above. Such interest was conveyed to Beck without the written consent of said lessors.

On the 15th day of March, 1892, Beck entered into a written contract with defendant O'Connor, by which he sold to O'Connor a one-third of the two-sevenths interest in and to the lease and bond in question, for the sum of $4,250, $3,000 of

which was paid, leaving the balance for which this suit is brought to be paid as soon after June 15th following as the said O'Connor could determine that the interest he had purchased of Beck in said lease and bond was free and clear of all charges, incumbrances, liens and assessments, of whatever nature or kind. Thereafter O'Connor, it is alleged, ascertained that there were incumbrances, liens and assessments upon the interest and title to the lease and bond sold to him by the plaintiff, amounting to a sum largely in excess of the amount sued for, and notified the plaintiff thereof, and demanded that he remove said liens and incumbrances, or execute to him security to hold him harmless against such liens and assessments, and declined to pay the sum sued for, unless the plaintiff would remove such liens and assessments upon the interest purchased in the lease and bond, or give to him the indemnity demanded. The plaintiff refused either to discharge the liens and assessments against the interest in the lease and bond sold to the defendant O'Connor, or to indemnify him as demanded.

After the commencement of this suit against O'Connor, O'Connor answered, setting up substantially the facts as aforesaid, and alleging that, in purchasing the interest in the lease and bond mentioned, he acted solely as the agent of defendant Cooper, disclaiming any interest personally in the matter, and asking that Cooper be made a party to the suit. Thereupon the court made Cooper a defendant, who answered, setting up substantially the same facts as those contained in the answer of O'Connor, and asked judgment against the plaintiff for the sum of $3,000 and interest, which sum had been paid to the plaintiff for the interest in the bond and lease sold to the defendant, on the ground that the title of the plaintiff to the interest in the lease and bond conveyed had wholly failed.

The cause was tried with a jury, and a verdict rendered in favor of defendants for the sum of $3,000, upon which verdict judgment was duly entered. From the judgment and an order refusing a new trial, the plaintiff appeals.

*J. L. Staats*, for Appellant.

The testimony is uncontradicted that the plaintiff had no voice or no hand in the management or development of the property by Olds; that he stood as a tenant in common; that he was not a partner of any of the members of the Cooper syndicate, referred to by him in his testimony in the management of the property, and could not be bound by authority of law for any share of the expenditures made on the common property without his consent. Plaintiff, as co-tenant with them as owners of the property, would not be liable for any share of the expenses for any improvement or development of the property without his consent and an agreement on his part to so contribute. A lien for such labor could only be enforced against the interest of the contracting party. (See *Rico Reduction and Mining Company* v. *Musgrave and others*, (Colo.) 23 Pac., 458. This case is directly in point. Also, *Mellor* v. *Valentine*, Colo. 3, 255; *Williams* v. *Canal Company*, (Colo.) 22 Pac. Rep. 806.) The only theory that the defendants in this case can adopt in order to hold plaintiff responsible for a share of the expenditures, made upon the property in controversy, in proportion to the plaintiff's interest in the same, is that it is so far as the owner of the property is concerned, a mining partnership; defined by the Civil Code, Section 3350, as follows: "A mining partnership exists when two or more persons, who own or acquire a mining claim for the purpose of working it and extracting the mineral therefrom, actually engage in working the same." The court will notice that being actually engaged in working the mine, is essential, otherwise the owners of the mine are simply tenants in common. (*Dougherty* v. *Creary*, 30 Cal. 290; *Septembre* v. *Putnam*, (*Id.*) 490; *Henderson* v. *Allen*, 23 Cal. 519; see *Skillman* v. *Lachman*, (*Id.*) 118, as bearing somewhat on the definition of mining partnership; see 81 Cal. 14; 89 Cal. 367.) So far as this proposition is concerned, we need not go farther than the decisions of this court. (See *Anaconda Copper Mining Co.* v. *B. M. Co.*, (Mont.) 43, Pac. Rep. 924.) It will be noticed in this case that the plaintiff Beck, nor his immediate assignors of the leases from Stapleton and others to

them, did not in any sense, render them partners, in owning their several interests in the mine in controversy, but that the assignees simply agreed to work the mine for a compensation out of the products of the mine, or in other words to pay a royalty of 25 per cent. upon the product realized from the mine. is not a lease, although denominated by that term. A contract by which a party agrees to work a mine and share the expenses and bear his portion of the expenses and receive a share of the product as compensation, does not constitute him a mining or general partner; nor is the contract a lease, though denominated by that term. (*Stewart* v. *Adams*, (Cal.) 26 Pac. Rep. 970; *Houdepoll* v. *Liberty Hall Co.*, (Cal.) 22 Pac. Rep. 339, (80 Cal., 558.)

So that while under Section 3353, of the Civil Code, each member of a mining partnership has a lien on the partnership property for debts due creditors thereof, yet if the so-called syndicate, as testified by witness Cooper, was not a mining partnership, the statute could not be invoked for the enforcement of this so-called lien for assessments. Conceding, for the sake of argument, that the syndicate was a mining partnership, as defined by the Civil Code, which we deny, yet, defendant Cooper, who, for the purposes of defense, represents O'Connor, does not even claim he was a member of it; does not even claim that plaintiff ever authorized the labor to be done. So that under the testimony of defendant Cooper, who represents defendant O'Connor, no member of the syndicate, if it was a mining partnership, had any special authority whatever to bind plaintiff Beck for any expenses incurred by the syndicate through Olds, their manager, and unless Olds and the syndicate were specially authorized by Beck to incur these expenses, the plaintiff would not be liable, unless ordinary partners, which is not claimed. (See § 3358, Civil Code, *Jones* v. *Clark*, 42 Cal. 181; *Skillman* v. *Lachman*, 23 Cal. 198.) But instead of the arrangement being a mining partnership, they are not even tenants in common in the mine itself, but as above stated only tenants in common of the products of the mine, until a division is made according to the

contract.    If this is true, no lien could attach to the mine it-
self under such a contract.    (See on this proposition the fol-
lowing authorities:    *Bernal* v. *Hovious*, 17 Cal. 542; *Smith*
v. *Touksberry*, 20 Ala. 212;    *Fander* v. *Rhea*, 32 Ark. 435;
*Somer* v. *Joyce*, 40 Conn. 592; *Scott* v. *Ramsey*, 82 Ind. 330;
*Dinehart* v. *Wilson*, 15 Barber, 597.)

*Sydney Fox* and *Campbell & Stark*, for Respondents.

If Olds and Beck had been ordinary owners of the title to
the mining claim, and neither of them were under any obliga-
tions to perform labor or make expenditures, Beck's interest
would not then be liable, but where the expenditures are com-
pelled to be made to preserve the property, the co-tenant
making them has an equitable lien on his co-tenants' interest
therefor.    (*Noon* v. *Jennings*, 179 Ind., 336; *Prentice* v.
*Janssen*, 79 N. Y. 478;    *Alexander* v. *Ellison*, 79 Ky. 148;
*Jenkins* v. *Jenkins*, 5 Atl. 139;    *Coffin* v. *Heath*, 6 Met. 76;
Freeman on Co-tenancy, 322; *Eads* v. *Rutherford*, 16 N. E.
587; *Holbrooke* v. *Harrington*, 36 Pac. 365.)

PEMBERTON, C. J.    We have felt very much inclined to
dismiss this appeal on account of the utter failure of counsel
to comply with the rules of court in relation to the prepara-
tion of his brief.

Subdivision 3 of Rule 5 is as follows:    "Contents of brief.
This brief shall contain, in the order here stated:    (1) A con-
cise abstract or statement of the case, presenting succinctly
the questions involved, and the manner in which they are
raised, which abstract shall refer to the page numbers in the
transcript in such manner that pleadings, evidence, orders
and judgment may be easily found.    (2) A specification of
errors relied upon, which shall set out separately and par-
ticularly each error asserted and intended to be urged.
When the error alleged is to the admission or to the rejection
of evidence the specification shall quote the full substance of
the evidence admitted or rejected.    When the error alleged

is to the charge of the court, the specification shall set out the part referred to *totidem verbis*, whether it be instructions given or instructions refused."

Counsel has absolutely ignored this rule. The brief contains no proper statement of the case, no specifications of errors, nor any instruction given or refused of which counsel complains. As a consequence, we have been compelled to go over and over, through and through, time without number, a poorly prepared bunglesome transcript, to find the matters complained of by counsel. Such utter disregard of the rules of court by an appellant in this respect will in the future be punished by a dismissal of the appeal. We must either punish such seeming contempt for the rules of court, or abolish them.

At the trial of this case, the court permitted the defendants to prove the terms and conditions of the lease and bond from Stapleton and others to Addoms and Welch, under which the plaintiff claimed title to the interest therein sold to defendants, for the purpose of showing that it was absolutely necessary, under such terms and conditions of said lease, for Olds to do the work he performed, and make the expenditures he did, to keep alive his own and plaintiff's interest and title under the lease to the leased premises, and that, if Olds had not done such work on said premises, plaintiff's interest and title under and to the lease and bond would have wholly failed. It is not claimed that plaintiff ever did any work or expended any money to preserve the title to or under the lease and bond which he sold to defendants, but that Olds did preserve and keep alive such title by his work and expenditures on the leased premises under the lease. The court instructed the jury that, under such circumstances, Olds had a claim against plaintiff for his share of the work and expenditures, and was entitled to a lien against his interest in the leased premises acquired under and by the assignment of the two-sevenths interest of the lease and bond by Addoms and Welch. To the admission of this evidence and the giving of such instructions, the plaintiff excepted, and assigns such action of the court as error.

Counsel contends that plaintiff and Olds were co-tenants of the leased premises, and that he was not liable for any expenditures Olds might or did make thereon. · If plaintiff and Olds had been the owners as co-tenants of the premises in controversy, the argument of counsel that one co-tenant could not incumber the interest of another by work or expenditures thereon would have been pertinent, and perhaps conclusive. But we have a different case, here. Whatever interest Olds had or the plaintiff acquired was under the lease from Stapleton and others to Addoms and Welch. In order to preserve any interest under the lease, the leased premises had to be worked continuously by the lessees or their assignees. Olds did work the leased premises continuously, and made large expenditures thereon, to preserve the leasehold estate; and such work and expenditures necessarily inured to the benefit of plaintiff. Plaintiff became a party to the lease by purchase from Addoms and Welch, and was bound by its terms. He could not, in equity, appropriate the benefits resulting from the work and expenditures of Olds on the premises without becoming liable for his share of the work and expenditures necessary to preserve the leasehold estate. Therefore Olds had a claim against plaintiff, and was entitled to a lien on his interest therein for his share of such work and expenditures. (*Prentice* v. *Janssen*, 79 N. Y. 478 ; *Jenkins* v. *Jenkins*, (N. J. Ch.) 5 Atl. 134 ; *Eads* v. *Retherford*, 16 N. E. 587, and authorities cited; *Holbrooke* v. *Harrington* (Cal.) 36 Pac. 365; Freeman on Co-Tenancy, 322.) The amount chargeable to the interest of plaintiff in the premises was far in excess of the amount sued for. Plaintiff, it is conceded, refused· to pay this sum or· discharge the lien Olds was entitled to against the interest sold to defendants, by reason whereof plaintiff's title to the premises and to the interest in the lease and bond sold to the defendants wholly failed. Under such circumstances, plaintiff had no right of action against the defendants or either of them, and they were certainly entitled to recover the money they had paid for a title that had wholly failed. Plaintiff's contract bound him to convey a good title.

He did not do it. He refused to perform the conditions and terms of the Stapleton lease upon which the preservation and completion of the title he sold depended.

There are other assignments of error, but, being of the same character, they are necessarily determined by the above treatment of the main question involved. We think the case was fairly tried and determined upon its merits.

The judgment and order appealed from are affirmed.

*Affirmed.*

HUNT and PIGOTT, JJ., concur.

