STATE ex rel. REINS et al. *v.* SIXTH JUDICIAL DISTRICT COURT, Defendant.

[No. 1,342.]

[Submitted April 3, 1899. Decided April 24, 1899.]

*Appeal—Stay Bond—Justification of Sureties—Release of Sureties—Certiorari.*

1. Civil Code, Sections 3681, 3682, provide that a surety cannot be held beyond the express terms of his contract, in the interpretation of which the same rules shall govern as in other contracts. Code of Civil Procedure, Sections 1726, 1730, provide that an appeal does not stay execution unless an undertaking be executed by appellant, with sureties, conditioned for payment of the judgment as affirmed, which appeal, thus perfected, shall stay all further proceedings in the court below. *Id.* Section 1732, provides that, where sureties fail to justify when excepted to, execution on the judgment shall be no longer stayed. *Held,* that sureties on such a bond were not liable, though they failed to justify as required, where respondent, before determination of the appeal, issued execution against appellant.

2. The statute requiring a justification of sureties on a stay bond, is directory, and meant to be for respondent's, not appellant's, benefit, and may be waived by respondent.

3. Stay of execution being a consideration of great value, sureties who execute an undertaking therefore have a right to rely upon the letter of their bond, and to stand upon the entirety of the expressed consideration.

4. A respondent, who, in total disregard of the contract expressed in terms in the bond of the sureties, proceeds with a levy and sale under an execution before the determination of the appeal in the Supreme Court, elects to abandon the security of the stay bond, and thereby waives his right to a judgment against the sureties.

5. Where sureties on a bond given to obtain stay of execution on appeal fail to justify when excepted to, as required by statute, and respondent thereafter, and before the

appeal is determined, obtains an order authorizing execution against appellant, and levies on and sells the latter's property, thereby releasing the sureties, the entry of judgment against them by the lower court, after affirmance, on motion of respondent, is in excess of jurisdiction, and reviewable by *certiorari.*

*On Rehearing.*—Any action of the judgment debtor in proceedings to which the sureties on a stay bond were not parties, and with which they had nothing to do, cannot modify the contract of, or impose any liability upon, the sureties not included in the bond itself.

CERTIORARI by the State, on relation of John P. Reins and others, against the District Court of the Sixth Judicial District in and for Carbon County, to review a judgment. Judgment set aside as to relators.

Statement of the case by the Justice delivering the opinion.

*Certiorari* to review a judgment of the District Court of the Sixth Judicial District entered November 21, 1898, against the relators, for $3,456.47, as sureties on an undertaking to stay execution on appeal to this Court from a judgment of said district court in the case of *Beck* v. *O' Connor et al.*, reported in 21 Mont. 109, 53 Pac. 94.

The return shows that on July 23, 1896, judgment was entered in the aforesaid court in favor of Walter Cooper and William O'Connor, against William Beck, for the sum of $4,203.50 and costs; that on March 20, 1897, said Beck appealed from said judgment to this Court, and attempted to procure a stay of execution by filing an undertaking on appeal, signed by relators as sureties. The undertaking recites that, whereas William Beck is about to appeal to the Supreme Court from the judgment made and entered against him in the aforesaid action of *Beck* v. *O' Connor, etc.*, and continues substantially as follows: Now, therefore, in consideration of the premises, and of such appeals, we, the undersigned (naming the sureties, who are relators in this application), "do hereby jointly and severally undertake and promise, on the part of the appellant, William Beck, that the said appellant will pay all damages and costs which may be awarded against him on the said appeals, not exceeding three hundred dollars, to which amount we acknowledge ourselves jointly and severally bound.

"And whereas the appellant is desirous of staying execution

of the said judgment so appealed from, we do further, in consideration thereof and of the premises, jointly undertake and promise, and do acknowledge ourselves further jointly and severally bound in the further sum of eight thousand four hundred and thirty-six ($8,436.00) dollars, being double the amount named in said judgment, that if' said judgment appealed from, or any part thereof, be affirmed, or the appeal be dismissed, the said appellant shall pay respondents the amount directed to be paid thereby, or the part of such amount as to which the same shall be affirmed, if affirmed only in part, and all damages and costs which shall be awarded against the appellant upon the appeal; and that if the appellant does not make such payment within thirty days after the filing of the *remittitur* from the said Supreme Court in the court from which the appeals are taken, judgment may be entered, on motion of the respondents, in their favor, against the sureties for such amount, together with interest, that may be due thereon, and the damages and costs which may be awarded against the appellant, upon the said appeals herein; provided, however, that the judgment to be entered, as aforesaid, against the said sureties shall be for such amounts only as in their affidavits of justification, accompanying this undertaking, each of the said sureties states that he is severally worth.''

It further appears that, upon the filing of said undertaking, and within the time prescribed by law therefor, respondents in said appeal served and filed their exceptions to the sufficiency of the sureties to the above undertaking. This was done under Section 1732, Code of Civil Procedure. It then appears that the sureties on said undertaking did not justify, as required by law, and that thereafter, on the 17th day of May, 1897, respondents in said appeal, by petition to said district court, set forth the fact of the service of the notice to the sureties to justify as required by law, and their failure to do so, and asked the said court to order the Clerk of the Court in and for Carbon county in said Sixth judicial district to issue an execution to satisfy the judgment theretofore rendered in said cause; and that, if judgment could not be made

out of the property of Beck in Carbon county, the clerk be
directed to issue alias executions to the sheriffs of Gallatin and
Silver Bow counties, respectively.   This petition was heard,
and on May 17th an order made in accordance with the prayer
thereof.

The return shows that the sheriff of Gallatin county levied
upon and sold certain real property belonging to William
Beck, but the amount realized was insufficient by a large sum
to satisfy the judgment.

It also appears that, on the appeal .to this Court from the
judgment referred to, in *Beck* v. *O' Connor, supra*, the judg-
ment of the District Court was affirmed on May 9, 1898. The
*remittitur* of this Court was filed in the district court on July
11, 1898.

Thereafter, and on November 21, 1898, counsel for defend-
ants and respondents in the suit of *Beck* v. *O' Connor, supra*,
moved the district court that judgment be entered against the
several bondsmen of Beck on the appeal bond filed March 20,
1897.   It appears this motion was not served upon or con-
tested by these relators, bondsmen in the bond on appeal.   The
motion was granted, and on the same day (November 21, 1898)
judgment was rendered in favor of Cooper and O'Connor, and
against the sureties, for $3,456 47, balance due on the judg-
ment against Beck, together with interest.

Thereafter Cooper and O'Connor had execution issued
against these relators, and placed the same in the hands of the
sheriff of Silver Bow county; and, under command of the exe-
cution, the sheriff was about to levy upon and sell the prop-
erty of relators, when writ herein was issued commanding the
said district court to certify to this Court a transcript of the
record and proceedings in the action of *Beck* v. *O' Connor et
al.*, to be reviewed by this Court; and in the meantime the
district court was directed to desist from further proceedings,
and execution was stayed.

*E. N. Harwood* and *Robt. McBride*, for Relators,

*A. J. Campbell* and *Sydney Fox*, for Defendant.

HUNT, J.—The consideration of the undertaking of these relators was a stay of execution pending the determination of the appeal from the District to the Supreme Court in the case of *Beck* v. *O' Connor et al.*, 21 Mont. 109, 53 Pac. 94.    If no stay could have been had until the judgment of this Court was rendered, the sureties might never have executed the bond.   Certain present conditions often exist under which a man will assume a liability upon an appeal and stay bond which under other circumstances he would not.   The suspension of a levy under an execution against a judgment debtor until his appeal can be heard by the Supreme Court may operate so advantageously to such an appellant as to impose upon the sureties on the stay bond comparatively slight risk of eventually having to pay the judgment appealed from should the same be affirmed; while a levy before the appeal is heard and determined might have the effect of ruining the appellant, and removing every opportunity, otherwise close at hand, to prepare himself to pay the judgment, if affirmed, and to protect his sureties against payment on their part.   Stay of execution being a consideration of great value, sureties who execute an undertaking therefor have a right to rely upon the letter of their bond, and to stand upon the entirety of the expressed consideration therein, and their liability cannot be extended by implication.   (*Smith* v. *Lovell*, 2 Mont. 332.) This principle is formulated in Sections 3680 and 3681 of the Civil Code, which provide that a surety cannot be held beyond the express terms of his contract, and that, in the interpretation of the terms of a contract of suretyship, the same rules are to be observed as in the case of other contracts.   In the application of these general rules it is necessary that relators be secured the consideration, and the entire consideration, named in the express terms of their bond or undertaking, unless they have done that which has excluded them from the benefits of the rules.   Let us see if they have.   The record shows that they agreed that, in consideration of a stay of execution of the judgment appealed from, they became bound in the sum named in the undertaking that if said judgment ap-

pealed from, or any part thereof, was affirmed, or the appeal was dismissed, by the Supreme Court, appellant Beck would pay respondents Cooper and O'Connor the amount directed to be paid, and all damages and costs awarded against appellant on the appeal. They did not agree to pay if *any* stay was given, but did if a stay was given until the appeal was affirmed or dismissed by the Supreme Court.

But what occurred? Nearly a whole year before this Court handed down its opinion in the appealed suit of *Beck* v. *O' Connor et al.*, *supra*, affirming the judgment of the lower court, execution on the judgment appealed from had been issued by an order of the district court, made at the instance of respondents Cooper and O'Connor, the property of the appellant Beck had been levied upon and sold, and the proceeds of such sale had been applied on the judgment appealed from. So far, this action of respondents was in total disregard of the contract of the sureties, and put the respondents in an attitude of announcing to the sureties that, as respondents, they would no longer rely upon the undertaking for a stay, but had abandoned the same, and had resorted to their execution by levying upon the appellant's property.

Now, we inquire whether the bondsmen can avail themselves of this action of respondents to claim exoneration from liability on the stay bond. Counsel say the sureties cannot, even though their contract is express in its terms, because of their omission to justify on the stay bond, as required by Section 1732 of the Code of Civil Procedure, after exception to their sufficiency was made in due form by O'Connor and Cooper. This omission, it is argued, was the sureties' own act, and, because of it, execution was no longer stayed; wherefore it is concluded that O'Connor and Cooper, respondents in the appealed suit, had a right to proceed under the execution, and, if the judgment was not satisfied by the execution against Beck, they could still hold the sureties should the judgment be affirmed on appeal to this Court. This argument has an unsound basis, for it necessarily involves the proposition that a justification to an undertaking, if required of the sureties

after they have been excepted to, becomes so blended with the undertaking itself that nonobservance of the statute requiring the justification not only fails to longer stay the execution, but reaches to the letter of the undertaking itself, by importing into its terms an agreement to pay the judgment appealed from, if affirmed or dismissed, notwithstanding the fact that the express consideration of a stay pending the determination of the appeal by this Court has failed. The exact fault of this reasoning seems to us to lie in a confusion of the consequences of a failure on the part of sureties to justify with those following the levy of an execution by respondents before the appeal is determined by this Court. Mere failure to justify does not relieve the sureties guilty of the omission, and constitutes no defense against their liability. (*Blair* v. *Hamilton*, 32 Cal. 50; *Murdock* v. *Brooks*, 38 Cal. 596.) Their contract to pay the judgment appealed from, upon affirmance or dismissal thereof, is not at all affected (*People* v. *Shirley*, 18 Cal. 121; *Lee* v. *Watson*, 15 Mont. 228, 38 Pac. 1077), nor is their obligation in the least lessened, by neglect to prove their solvency, provided the consideration of a stay is not taken away from them by the voluntary act of the respondents. The statute requiring a justification is directory, and meant to be for respondents', not appellant's, benefit. Respondents here could have waived the statutory provisions entirely by never moving to have the sureties justify; yet the sureties' undertaking would have stood as of full force and effect so long as its consideration was not impaired, until the determination of the appeal or the dismissal thereof by this Court. We do not question the correctness of the doctrine recognized in *Moffat* v. *Greenwalt*, 90 Cal. 371, 27 Pac. 296, which will not allow sureties on a stay bond to claim release where, through their own omissions, they have failed to justify under a statute like Section 1732, requiring them to do so if their sufficiency is excepted to. Unquestionably, that is the law. But that rule does not conflict at all with the right of sureties to have the stay of execution granted and named as the consideration of their undertaking, *if they are to be called upon to pay the judg-*

*ment when affirmed;* and it is this right that these sureties
have never waived.   It was not, therefore, the nonobservance
of the statute which relieved the sureties of liability at all,
for it did not; but it was the act of the respondents in levying
the execution against the property of the judgment debtor,
and selling the same when they need not have done so, and
should not, if they meant to rely upon the sureties' undertak-
ing for a stay, executed for their benefit.   Respondents had a
right, under Section 1732, *supra,* to proceed with the execu-
tion after the time had elapsed in which the sureties should
have justified, no matter whether the appeal had been heard or
not; for execution was no longer stayed, and, under such cir-
cumstances, the sureties could have interposed no obstacle to
the levy upon the appellant's property; but, in pursuing that
course, they destroyed the consideration named in the sureties'
contract, deprived them of the benefit of it, and, having done
so, they cannot now fix the sureties' liability under contingen-
cies not embraced in their undertaking, or the several statutes,
including Sections 1726 and 1730 of the Code of Civil Pro-
cedure, with relation to which the undertaking was given.
Having made their election to proceed with the levy and sale
thereunder, we think they chose to treat the stay bond as in-
effectual, and we hold that they have waived their right to a
judgment against the sureties.   As bearing more or less upon
the case, we cite *Columbia & P. S. Railroad Co.* v. *Braillard,*
12 Wash. 22, 40 Pac. 382, and *Powers* v. *Chabot,* 93 Cal. 266,
28 Pac. 1070.

It is hardly necessary to add that, in discussing the liability
of the sureties on the stay bond, we do not mean to imply
that the bond is not good to perfect the appeal itself.   We
believe it is.   (*Schacht* v. *Odell,* 52 Cal. 447; *Hill* v. *Finni-
gan,* 54 Cal. 311; Hayne, New Trials and App. p. 678.)   Our
opinion only goes to the effectiveness of the obligation to se-
cure the ancillary relief of staying execution on the judgment
from which the appeal is prosecuted.

2.   As to remedy by *certiorari:*   Was the action of the
district court in entering judgment in favor of the respond-

ents Beck and O'Connor, against the sureties on the stay bond, in excess of the jurisdiction of that court? We believe it was. As hereinbefore decided, when the respondents proceeded with the levy and sale, they elected to abandon the security of the stay bond, and released the sureties upon their undertaking to pay the judgment affirmed by this Court. Respondents' position became analogous to that of a plaintiff who dismisses one of two causes of action against a defendant. This he may do according to the provisions of the Code (Code of Civil Procedure, Sec. 1004); and if he so acts defendant is no longer bound to pay attention to that cause which plaintiff has dismissed (*Loeb* v. *Willis*, 100 N. Y. 235, 3 N. E. 177). Relator's case is stronger, however; for, until the judgment appealed from was affirmed by this Court, and until the *remittitur* was filed with the Clerk of the District Court, and until appellant had failed for thirty days thereafter to pay the judgment, no judgment could have been rendered against the sureties, for until then the court acquired no jurisdiction over their persons, under the stipulations of their contract or otherwise. Furthermore, at that time they were under no obligation to go into the district court, for the reason that the records of that court showed the prior order authorizing execution and levy, together with the fact of levy and sale, which (always considering the bond for a stay only) operated as a complete release to the sureties, and put them beyond the jurisdiction of the court in subsequent *ex parte* proceedings attempted to be had against them under the terms of the stay bond and the statute under which the bond was given. ( *Watts* v. *Overstreet*, 78 Tex. 571, 14 S. W. 704.) The contingencies necessary to happen before the sureties' liability was fixed had not only failed to happen, but, by respondents' prior action, they had been prevented from happening; and, in our judgment, the court had lost jurisdiction over these relators.

The case is one, therefore, where the action of the court in entering judgment against the sureties, and authorizing execution thereunder to be issued, was more than a mere irregularity or error of law occurring in the course of proceedings

which the court was authorized to conduct, and amounted to an excess of the power of the court, and became subject to be reviewed by this writ.

It is therefore ordered that the judgment and order of the district court in and for Carbon county, made and entered on November 21, 1898, against these relators as sureties upon the stay bond in the case of *Beck* v. *O' Connor*, in so far as it affects said relators as sureties on the stay bond, be, and the same is hereby, set aside and annulled.

BRANTLY, C. J., and PIGOTT, J., concur.

## ON PETITION FOR RE-HEARING.

[Submitted May 5, 1899. Decided May 15, 1899.]

**PER CURIAM.**—Defendant's counsel pray for a re-hearing, calling our attention to the fact that it appears by the record in the case of *Beck* v. *O' Connor et al.* cited in the opinion, that on May 18th, 1897, execution was issued directed to the sheriff of Gallatin county, who levied upon and advertised for sale certain real estate of Beck, but that about July 1st, 1897, Beck caused a writ of injunction to be issued out of the district court of Gallatin county restraining the sheriff from making a sale ; whereupon the sheriff returned said execution without making such sale or the sale of any property under the execution. The district court dissolved the injunction but continued it in force pending an appeal to this Court. On appeal the order of the lower court dissolving the temporary injunction order was affirmed on May 9th, 1898. (*Beck* v. *Fransham*, 21 Mont. 117.) It therefore appears that no property was ever sold under the execution issued to the sheriff of Gallatin county, nor was any other execution issued until *after* the judgment in the case of *Beck* v. *O' Connor et al.*, was affirmed by this Court on May 9th, 1898.

These dates and facts disclose that the petition of relators for the writ of *certiorari* erred in its allegation that the

"property of said plaintiff and appellant William Beck was seized and *sold* thereunder during the pendency of said appeal." In their brief, also, relators made the same mistake, and, as no correction of the statements was made by defendant before the submission of the case, we took the averment of the petition to be in exact accord with the record, and relied thereon as an admitted fact. It is conceded that the mistake was inadvertently made and overlooked, by the respective counsel, but now that it is brought to our attention we are pleased to rectify it.

However, after consideration of the facts as modified, we are unable to change our opinion as to the legal principles applicable to the case. It matters not that the judgment debtor Beck insisted in *Beck* v. *Fransham, supra,* that the execution of the bond operated as a stay, notwithstanding the fact that the sureties failed to justify, for his contention could not modify the contract of, or impose any liability upon, the sureties on the stay bond not included in the bond itself,—and it is the sureties' rights which are here involved. O'Connor and Cooper having caused the execution to issue and the property of Beck to be levied upon pending the appeal, must be regarded as having elected to release the sureties, and as having waived their rights to thereafter insist upon the sureties' liability; and it matters not that an actual sale was prevented, the intervention through which the sale was stopped having been a proceeding to which the sureties were not parties and with which they had nothing to do.

O'Connor and Cooper cannot play fast and loose by suing out and levying execution, thus violating the contract, yet afterwards have it enforced for the reason that execution was stayed the stay not having been procured at their instance. If the property of Beck turned out to be insufficient to pay the judgment, the sureties ought not to be responsible for the deficiency, for they had long before been released by the acts of O'Connor and Cooper. The motion must be denied.

*Motion denied..*