LOTTIE CLOSE, (FORMERLY LOTTIE RUEGSEGGER),
PLAINTIFF AND RESPONDENT, v. ESTATE OF RENO W.
RUEGSEGGER, DECEASED, NELLE D. RUEGSEGGER, EXECUT-
RIX OF THE ESTATE OF RENO W. RUEGSEGGER, NELLE D. RUEG-
SEGGER, INDIVIDUALLY AND NEAL RENO RUEGSEGGER, DEFEND-
ANTS AND APPELLANTS.

No. 10550
Submitted September 11, 1963. Decided November 4, 1963.
Rehearing denied December 5, 1963.
386 P.2d 739

(32)

Vernon Hoven (argued), Missoula, for appellants.

Ludvig Tande, Plentywood, Milton G. Anderson (argued), Sidney, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment in favor of plaintiff in two actions consolidated for trial by stipulation and agreement of court and counsel. One action was for the enforcement of a property settlement agreement and the other was a suit on a rejected creditor's claim arising out of the same agreement. Upon trial before the court without a jury, the court rendered its judgment in favor of plaintiff and against the defendants.

Appellants and defendants, Nelle D. Ruegsegger and Neal Reno Ruegsegger are, respectively, the surviving wife and son of Reno W. Ruegsegger, deceased. Nelle D. Ruegsegger, the duly appointed and acting executrix of the Estate of Reno W. Ruegsegger, and the estate itself, also appear as parties to this appeal. The above parties will hereinafter be referred to as appellants. Respondent and plaintiff, Lottie Close, formerly Lottie Ruegsegger, is the first wife of the deceased, Reno Ruegsegger, and will hereinafter be referred to as respondent.

Respondent, Lottie Close, married Reno W. Ruegsegger on October 25, 1911, and they lived together on their farm in Sheridan County, Montana, until their separation on or about July 21, 1928. Reno had taken a homestead on property near the town of Outlook. Lottie arrived in Outlook in 1911, and after the marriage, moved out to the farm. Over the years, the couple, through their joint efforts, had accumulated other real and personal property, the real property alone being over 1500 acres. By 1928, Reno and Lottie decided to separate. To facilitate the separation a property settlement agreement was entered into. The agreement was made in the Security State Bank at Outlook. From the record it appears that the agreement was drawn and witnessed by two bankers who were not lawyers. Neither signatory was represented by counsel. Said agreement is set forth more particularly below:

"Agreement between R. W. Reugsegger [sic] and Lottie Reugsegger [sic], Man and wife.

"We having agreed to live apart for a period of one year and having further agreed to consent to a peaceful divorce at the end of the one year period if such divorce be desired by either of us.

"Now in consideration of such agreement I hereby release all my claim as wife and dower rights to all the personal and Real Estate property now acquired by us on the payment to me by my husband, R. W. Reugsegger, [sic] this day of three hundred dollars the receipt of which is hereby acknowledged, and a further payment of seven hundred dollars on November first 1928, and a still further payment of five thousand dollars when the divorce is granted.

*"It is further agreed that Lottie Reugsegger [sic] is to receive five percent of all oil royalties in event there is any oil production on the land transferred by her.*

"It is further agreed to by us that this agreement be considered as final and that the District Court consider my transfer this day made to my husband, R. W. Reugsegger [sic] of my dower rights to all real estate and personal property as a good and sufficient transfer.

"Dated at Outlook, Montana this 21st day of July, 1928.

"Lottie Ruegsegger /s/, Reno W. Ruegsegger /s/. Witness. Frank Koester /s/, R. O. Nelson /s/." Emphasis supplied.

Contemporaneously with the execution of the property settlement agreement, Lottie, in performance and fulfillment of her promise, executed a warranty deed to Reno. The deed transferred all of her right, title and interest in the lands owned by the couple. Soon after, Lottie left the farm and received the $300 mentioned in the agreement. In November 1928, the $700 was also paid. The $5,000 was never paid. A divorce was obtained by Reno, on October 3, 1931, and on the same day he married Nelle Ruegsegger, nee Donaldson, one of the appellants in this appeal. In 1942, Lottie instituted suit against Reno for the $5,000 payment but it was dropped upon advice of counsel.

An oil and gas lease was executed on August 16, 1949, by Reno and Nelle Ruegsegger which provided for a ⅛ of production royalty. In 1957, oil was discovered on the Ruegsegger land. The respondent, Lottie, made no demand, under the agreement quoted above, prior to Reno's death which occurred on January 23, 1958. She then made claim upon the appellants for five per cent of all the proceeds from the oil produced on the land. The Amerada Petroleum Company, the successor in interest of the original lessee, impounded the amount claimed by her, which, measured from the time of discovery until the death of Reno, totaled $3,260.51.

On October 23, 1958, Lottie filed an action in the District Court of the County of Sheridan, asking that her oil interest be established in accordance with the agreement and demanding an accounting of all oil royalties received from the production of oil on the land. Lottie also filed a creditor's claim in Reno's estate for the money impounded by Amerada and upon its rejection filed a complaint in the same court on January 25, 1959.

Upon trial, Lottie Close was plaintiff's only witness. Defendants did not cross examine Lottie, but called her as their own witness in their case in chief. Cross examination was not pursued at this point nor was it after she had been examined in rebuttal.

After trial of the issues, the court made consolidated findings of fact, conclusions of law and a judgment pursuant thereto, adjudging plaintiff to be entitled to receive from the defendants "a five percent (5%) share of all oil producted [sic] (5% of 8/8th)" from the land described in the decree. The decree further adjudged respondent to be the owner of a five percent nonparticipating royalty in the lands concerned. The decree further adjudged respondent, Lottie Close, to have judgment against the estate of Reno W. Ruegsegger in her suit upon the rejected creditor's claim in the sum of $3,260.51, together with interest thereon at the rate of six percent per

annum from October 28, 1958, to the date of this judgment, and thereafter until paid.

Defendants filed exceptions to the findings of fact, including the 15th finding of fact, which is set forth below, from which the court derived its conclusion as to the extent of plaintiff's interest.

"15. That the terms of the property settlement agreement pertaining to all royalties are not clear but are ambiguous and it is necessary to consider the evidence to determine intent of the parties thereto. The evidence discloses that the deceased Reno W. Ruegsegger and the plaintiff had some familiarity with the usual twelve and one-half percent (12½%), or one-eighth (⅛) landowner's royalty after lease. That it was the intent of the parties thereto that plaintiff was to receive a five percent (5%) nonparticipating royalty in the event there was ever any oil production on the lands set forth and described in finding number 5 above."

The court further found that the agreement was an enforceable agreement which had been fully performed on the part of Lottie Close, and that the advent of production, which has now occurred, was the "only contingency upon which her right to receive a five percent royal was ever dependent after the execution of the agreement and the simultaneous transfer by plaintiff of the said lands in question."

From this judgment and decree the defendants appeal.

Appellants have not set forth specifications of error required by our Rule X, subd. 3(c). Appellants do not point out specifically any error by the trial court in its findings of fact, and more especially to finding of fact No. 15. This neglect has been held to be grounds for dismissal, in a long line of cases starting with Beck v. O'Conner, 21 Mont. 109, 53 P. 94; Courtney v. Missoula County, 21 Mont. 591, 55 P. 359. See Babcock v. Caldwell, 22 Mont. 460, 56 P. 1081. However, we shall proceed to a discussion of the issues presented by agrument.

We observe, too, that both parties introduced parol evidence, without objection, in an effort to determine the intent of the parties in entering into the agreement, Exhibit "A". Thus, on this appeal, we shall consider the third paragraph of the agreement as ambiguous as the trial court did, and as both parties did at the trial.

We recognize that, even without specifications of error, the appellants assert that the agreement is not ambiguous in their brief. Yet, from the record we are unable to find any place where the appellants objected to any testimony or evidence on the ground that the contract spoke for itself. There was no objection to the receipt of parol evidence. In fact, appellants themselves sought to bring in parol evidence by their examination of their own witness, Lottie Close. Unless evidence or testimony is objected to at the trial level it cannot be brought up in the first instance upon appeal. Bower v. Tebbs, 132 Mont. 146, 160, 314 P.2d 731; Carpenter v. Free, 138 Mont. 552, 560, 357 P.2d 882. See Teesdale v. Anschutz Drilling Co., 138 Mont. 427, 441, 357 P.2d 4. The record shows only that appellants objected to the introduction of the entire agreement because "it is incompetent, irrelevant and immaterial and doesn't tend to prove or disprove any issues in the case, and that upon the face of the instrument, it indicates that it is a contract for the payment of monies and not for the conveyance of any property rights."

We do not find any objection to any effort to find the intent of the parties to this agreement; nor do we find appellants contending that this agreement was not ambiguous. It appears that it was only after the trial court found the agreement ambiguous and reached a conclusion opposed to appellants' that they have decided that evidence at variance with *their* clear meaning should be disregarded.

It should be remembered that Lottie Close was not called as an adverse witness under R.C.M.1947, § 93-2706-6 (Rule 43(b)). Therefore, appellants are bound by her testimony.

Lottie's testimony, wherein she stated, "Well, there was to be twelve and a half percent the farm owner gets and I would settle for upwards of a half" was left standing alone as some evidence as to the intent of the parties. In appellants' brief is the statement that "The only apparent evidence upon which the court relied for this finding [No. 15] is certain testimony interjected after plaintiff had rested her case." This testimony, set out above, can hardly be called "interjected". It is the unimpeached and uncontradicted testimony of appellants' own witness.

Appellants have cited Bauer v. Monroe, 117 Mont. 306, 158 P.2d 485, for the proposition that the courts will not allow extrinsic evidence to change the words of a written agreement even though admitted without objection. This proposition is not in point with the problem before us. That case involved the cancellation of a written contract by oral agreement. The testimony admitted without objection, on the part of that defendant, was the oral agreement itself. The court there held that it was error to admit this testimony even though no objection had been made. Here, we can clearly distinguish the situations on their facts. Lottie's testimony only went to the intent of the parties, and was elicited by the now objecting party. It does not show that the agreement was something else, but only shows that it differed from the interpretation placed upon it by appellants.

The answer of appellants, including the eleven separate defenses, denied even the existence of consideration by respondent to the agreement, Exhibit "A". Yet, it was appellants' counsel who produced and offered in evidence the deed, from Lottie to Reno, previously described. This deed was never recorded and appears to have been in the possession of the Ruegseggers since its execution. It appears the deed was introduced for the apparent purpose of impeaching the testimony of appellants' own witness; while in fact, it succeeded in impeaching only appellants' answer. The facts of

this case, which are borne out by the existence of the deed, give further credence to the contentions of respondent. Lottie was giving up many valuable rights. She was leaving her home of seventeen years. In consideration for those rights and years she demanded some compensation. She was to receive $300 at the date of signing; $700 in approximately ninety days; $5,000 some time in the unascertainable future, and an interest in the oil "in event there is any oil production on the land transferred by her." As to the total amount of that consideration, we have only the testimony of Lottie Close, the only witness of both respondent and appellants. Although neither party had benefit of counsel at the time of executing the agreement, it can readily be seen that both parties recognized their relative bargaining positions. The lower court must have been impressed with the small amount of the initial payment, and the speculativeness of the subsequent payments. This could result in some evidence pointing toward an intent, on the part of the parties, to pass a larger portion of the oil in the event of production.

Another example demonstrating the intent of the parties is to be found in a letter of June 28, 1931, from Lottie to Reno, entered as defendants' exhibit nine. It is observed, too, that this letter was introduced by appellants. In this letter we find Lottie replying to a letter from Reno wherein it appears he had written of initiating a divorce. It also appears that Reno had mentioned making a new agreement to supersede the one already executed. She answered him by saying: "Send me a copy of the agreement and settlement and if I don't like it I'll cancel just as sure as hell, because I'm satisfied to take no less than that other agreement called for. *Including that oil right*. I surely was worth that much through all those hard years." (Emphasis supplied.) Although this letter was written three years subsequent to the execution of Exhibit "A", it was introduced by appellants and must have furnished the

trial court with more evidence pointing out the intent of the parties as to the amount of the consideration involved.

R.C.M.1947, § 93-401-17, states:

"For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret." In the instant case we find from the evidence and testimony presented, by both parties, the result reached by the trial court was not unreasonable. We find nothing in the record whereby any evidence or testimony was refused. The court made its determination with what was presented. It, like this court, must treat and take the case as found.

We further find, from the discussion above, that from the cumulative effect of the testimony and evidence, there was substantial evidence to uphold the judgment. We are long committed to the rule that "we will not reverse the finder of fact unless the evidence clearly preponderates against it." Marker v. Zeiler, 140 Mont. 44, 55, 367 P.2d 311, 317. There exists no conflicting testimony but merely a conflict in interpretation. The trial court is in the best position to decide that question.

We have considered appellants' arguments concerning "fractional royalty" and "fractions of royalty." This court is mindful of decisions and writers whereby such a problem would be decided by a rather mechanical approach. See generally Richardson v. Hart, 143 Tex. 392, 185 S.W.2d 563; 2 Williams and Meyers, Oil and Gas Law, § 327.2 at pages 85-90; Sullivan, Handbook of Oil and Gas Law, § 121, page 223. But this court does not decide such a case as is presented here in an abstract vacuum and therefore does not reach this point.

Appellants assert that these actions are barred by operation of R.C.M.1947, § 93-2603, which is an eight year statute of limitation upon actions "upon any contract, obligation,

or liability, founded upon an instrument in writing." Appellants have also had much to say about the meaning of a perpetual nonparticipating royalty. They seem to say that if the trial court's finding, to the effect that Lottie received such a royalty in 1928, is correct, she as barred to sue upon that agreement over thirty years later. They then try to throw this court upon the horns of a dilemma by arguing that if it were a mere promise, and would not come into being until the advent of production, it could not have been a perpetual nonparticipating royalty. This can only be answered by saying that her right to the perpetual nonparticipating royalty vested upon execution of the agreement. Her cause of action arose, in this case, upon the advent of production. Therefore, the eight year statute of limitation is not applicable.

Appellants' argument concerning laches is equally without merit.

For the above reasons, this court finds that the judgment of the lower court should be affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON, ADAIR and DOYLE concur.