60

IN THE MATTER OF THE ESTATE OF EFFIE DELLA
COCANOUGHER, Deceased.
CHARLES L. COCANOUGHER, Contestant and Plaintiff,
Respondent, *v.* WILLIAM MARION COCANOUGHER and
EFFIE MAY NYHART, Proponents and Defendants,
Appellants.

No. 10656
Submitted June 17, 1964. Decided March 3, 1965.
399 P.2d 420.

Leonard A. Schulz (argued), Carl M. Davis (argued), Dillon, for appellants.

Mark J. Doepker (argued), Butte, Frank E. Blair (argued), Virgina City, William Sheehan, Philipsburg, Doepker & Hennessey, Butte, for respondent.

HONORABLE R. D. McPHILLIPS, District Judge, sitting in place of MR. JUSTICE CASTLES, delivered the Opinion of the Court.

Will contest wherein, after the jury found undue influence, the district court refused to grant contestees a new trial and they have appealed.

This case, under almost identical facts, was previously before this court in Estate of Cocanougher, 141 Mont. 16, 375 P.2d 1009. In that case the jury found that the testatrix was competent to execute a will, but did so under undue influence. Although fraud was alleged, the court granted a motion of nonsuit as to that question. There, the district judge granted

contestees' motion for a new trial to be had on the question of undue influence. Contestant appealed that order and this court affirmed.

Two other appeals have reached this court involving the same parties in estate matters concerned with the administration of the estate of Effie Della Cocanougher, the mother of each of the parties to this action. See Cocanougher v. Cocanougher, 141 Mont. 28, 375 P.2d 1014; Cocanougher v. Cocanougher, 141 Mont. 597, 380 P.2d 883.

In view of this background, any further factual statement would seem superfluous, and further, the facts are as well stated in the above referred citation as could be done here. The chronicle of the Cocanougher family is firmly enough engraved in the legal annals of Montana.

As in Estate of Cocanougher, supra, the jury in this case again returned a special verdict to the effect that the mind of the testatrix was not free from undue influence at the time she executed her will.

Appellants here, proponents of the will, have set out seven specifications of error. The first five specifications resolve themselves into the question of whether there was sufficient evidence presented to the jury upon which to base their special verdict finding undue influence. Specification number six concerned an instruction, and the last complains of the court's permitting amendments to the bill of exceptions. As will be seen, there is no need to concern ourselves with the last enumerated specification.

In Estate of Cocanougher, supra, at pages 22 through 25, of 141 Mont., 375 P.2d 1009, we have stated what the law is in Montana concerning the question of undue influence. Although the question was not directly before the court in that case, we stated on pages 25 and 26 of 141 Mont., on page 1013 of 375 P.2d that:

"The record in the instant case is voluminous and most, if not all, of the plaintiff's evidence was directed toward the

alleged incompetency of the testatrix to make a will. Yet, at the same time it was repeatedly admitted by the plaintiff that he dealt with his mother in business affairs as usual. There was no evidence, or at the very most just a suggestion of evidence, as to any undue influence being exercised, as the term is used in our statute and cases heretofore referred to. According to all of the witnesses, none of them knew of the execution of a will or its terms. * * *

"As mentioned before, the record is voluminous and much of it is directed to competency which is not in issue here. * * * At the time testatrix made her will she was living alone and attending to her own affairs. She was old, but strong-willed. Her last testament was drafted by an attorney of her own choosing. It was executed in the absence of beneficiaries and without their knowledge until following her death. She did not change it for twenty months before her death. This matter is being returned for a new trial so we shall not comment further, except to say, that our review of the testimony and exhibits reveals much to indicate that the trial judge did not abuse his discretion in granting a new trial."

We have thoroughly reviewed the transcript on appeal. We have viewed this in an effort to establish what substantial new evidence was brought out in this case over what was presented to the first jury on the same subject. We regret to say that it appears that there is substantially nothing new to establish the fact or facts of undue influence.

The court is mindful that it is difficult to determine this case in the light of the findings of two Madison County juries. Further, the court is aware that where there is substantial evidence in support of a jury's findings, they should not be disturbed by the appellate court. Hardy v. Hardy, 133 Mont. 536, 326 P.2d 692. But, is it possible two Madison County juries could be wrong?

As we have stated before, we are long committed to the rule that we will not reverse the finder of fact unless the

evidence clearly preponderates against it. This is a sound rule that should not be avoided lightly, but where there is insufficient evidence to support the conclusions of the finder of fact, such a rule should not stand as a bar to justice. Quitmeyer v. Theroux, 144 Mont. 302, 395 P.2d 965; Estate of Ruegsegger, 143 Mont. 32, 386 P.2d 739; and see also In re Estate of Bodin, 144 Mont. 555, 398 P.2d 616.

As was stated, the first five specifications of error go to the question of the sufficiency of the evidence to sustain the verdict of the jury. It should be pointed out here that it is incumbent upon this court to review with particularity the evidence submitted on behalf of a contestant of a will, for, as pointed out in 25 Mont.L.R. 168, over 75 percent of the cases submitted to a jury in will contests are decided in favor of the contestant. The right to testamentary disposition of one's property is a fundamental one which reaches back into early common law. For, as this court stated in In re Murphy's Estate, 43 Mont. 353, 370, 116 P. 1004, 1008, "jurors are often inclined to disregard the evidence and to set aside a will upon some excuse found outside of the evidence, because the dispositions made by the testator do not comport with their personal notions of what is just and proper; and that in all such cases it is incumbent upon the court not to permit a will to be set aside except upon substantial evidence tending to show that it is not in fact the will of the testator."

Perhaps this case could be sent back to a Madison County jury any number of times and returned with a like result each time. But as the law was set out in the Estate of Cocanougher, supra, and the recent California case of In re Fritschi's Estate, 33 Cal.Rptr. 264, 384 P.2d 656, there must be sufficient evidence for a jury to base their verdict. It is not what the jury desires that determines whether a will stands or not, rather it is whether there is strong and cogent evidence to support the jury's findings and verdict. The burden upon the contestant must be met and sustained before any will can be invalidated.

Also, the consideration to be given evidence in determining whether there is substantial evidence of undue influence was reviewed in cause No. 10607, Estate of Maricich, 145 Mont. 146, 400 P.2d 873, decided February 24, 1965, by this court. After reveiewing the Montana cases this court said:

"The law in the cases concerning undue influence places upon the contestant the burden of proof in showing substantial evidence of undue influence. In determining this issue on undue influence we may consider:

"(1)   Confidential relationship of the person attempting to influence the testator;

"(2)   The physical condition of the testator as it affects his ability to withstand the influence;

"(3)   The mental condition of the testator as it affects his ability to withstand influence;

"(4)   The unnaturalness of the disposition as it relates to showing an unbalanced mind or a mind easily susceptible to undue influence; and

"(5)   The demands and importunities as they may affect particular testator taking into consideration the time, the place, and all the surrounding circumstances."

In the instant case, we do not intend to detail the voluminous testimony on all points. But, upon point 4 above the respondent dwells at great length. Much of his testimony was designed to show that Charles Cocanougher made such a great contribution to his mother's estate that any disposition other than to him was so "unnatural" as to suggest a mind easily susceptible to undue influence. The mother's will recited, "I make no provision for my son, Charles LeRoy Cocanougher, in this my last will for reason that I have fully provided for him during my lifetime and further for the reason that he has ample means of his own." It is because of this provision that contestant Charles dwells so much on the reverse of the statement—that his mother didn't help him during her lifetime but, instead to quote his brief, "For a period of 30 years

Effie Della Cocanougher had full trust and confidence in her son Charles *while he helped her* salvage and build her estate of $100,000.00."

The contestants beseech this court to carefully read and examine the evidence which they assert shows "overwhelmingly" that Effie May Nyhart, the daughter in a period of 18 months concentrated activity destroyed the trust and confidence of the mother in Charles by:

(a) Divesting Charles of the management, care and control of the $100,000.00 unit he helped her build up and acquire.

(b) Disinheriting Charles by will after always previously proclaiming she would never make a will.

(c) Acquiring for herself, Effie May Nyhart, the control of all of Mrs. Cocanougher's property and money while she yet lived.

(d) Persuading her mother that Charles had been stealing her calves, branding one for her and one for him, wasting her substance, buying too much feed, spending too much money, making a pauper out of her, making it appear that Charles was refusing to let her go upon her own land to gaze at her cattle.

(e) Divesting Charles of his mother's love, and companionship, refusing to speak to him for days after her daughter's visitations, appearing angry and upset.

Yet, by carefully reading and examining the record we conclude that there is just no substantial evidence to support the finding of the jury. Our analysis in the previous decision of this case previously quoted here, fits exactly. As we view the evidence of this case, the facts as presented are not nearly as strong to support a jury's finding of undue influence as they were in In re Fritschi's Estate, supra. Indeed, one of the contestees, Effie May Nyhart, was unable to influence her mother during her lifetime to procure a deed to some of the lands in question, let alone to unduly influence her in making a will. There is not one shred of evidence that either of the contestees had anything to do with the making of the testator's

will, nor its terms. Further, only the testator and her own attorney were present when the terms of the will were discussed and the will executed. The contestant has failed to show by substantial evidence that the contestees so influenced the testator as to bear down upon the volition of the testator at the time the will and its terms were made.

Appellants-contestees contend that the court erred in giving plaintiff's proposed instruction No. 21. This instruction stated:

"You are instructed the party using undue influence need not be present in person at the time of the execution of the document in question if the influence is present to constrain the party from exercising her free will. The evidence of the use of undue influence need not be direct."

Appellants further contend that the court erred in not giving their proposed instruction No. 10, which stated:

"You are instructed that unless it is established by a preponderance of the evidence that the testatrix was induced by the undue influence of defendants or either of them to execute an instrument in form and appearance her will, but in reality expressing testamentary dispositions which she would not have voluntarily made, you must find for defendants. To defeat a will the undue influence must have been directed toward the testamentary act and at the time thereof, or so near thereto as to be operative."

We agree with this contention of appellants. It is obvious that appellant's proposed instruction No. 10 was taken almost verbatim from Murphy v. Nett, 47 Mont. 38, 130 P. 451. It was error to submit the case to a jury laboring under plaintiff's proposed instruction No. 21, inasmuch as the instruction given does not state that undue influence must have been directed toward the particular testamentary act, and at the time thereof, or so near thereto as to be operative. Under this instruction, mere prior solicitation could be found to amount to undue influence by any jury. The instruction as given simply does not go far enough to comply with Montana

law as set out in Murphy v. Nett, supra. Had the proper instruction been given, and with the evidence submitted in this case, the jury could not have brought back a finding of undue influence.

On this appeal, the respondent specifies some 32 cross-assignments of error. We have carefully considered them and will not separately discuss them other than to observe that the trial court was lenient and allowed a wide range of evidence to the contestant. We see no prejudice there.

After two jury trials by competent counsel it appears that no further facts could be adduced which would warrant a jury to bring back a finding of undue influence. Further, there must, in all cases, be an end to litigation.

Reversed and dismissed.

MR. JUSTICES JOHN C. HARRISON and DOYLE concur.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICE ADAIR dissent.