LEE, RESPONDENT, *v.* WATSON, APPELLANT.

[Submitted December 14, 1894. Decided January 28, 1895.]

TRESPASS ON LAND—*Evidence showing ownership.*—In an injunction suit to restrain trespasses on land the plaintiff set forth his application to enter the land in question under the timber culture laws of the United States, his occupancy of the land, and a receipt of the receiver of the United States land-office, and it also appeared that his application was the only authorized filing upon the tract when this suit was instituted, and, although the defendant applied to contest, leave was invariably denied him. *Held,* That all these facts made a *prima facie* showing of ownership and right of possession in the plaintiff.

SAME—*Injunction to restrain further trespasses.*—Where it, is shown that the defendant has been guilty of repeated trespasses upon the plaintiff's land, always against the warnings and instructions of the latter, and that he not only attempted to contest the plaintiff's entry, but protracted a vain and hopeless litigation for the land, and has interfered with the plaintiff's attempt to cultivate the claim, and is threatening to cut and remove the plaintiff's crop, causing irreparable damage, and it also appears that the defendant is insolvent, a clear case is presented for the issuance of an injunction to restrain further trespasses. (DE WITT, J., concurs in the decision and in the opinion, taking the opportunity to say that, in so far as this decision, and also the decisions in *Sankey* v. *St. Mary's Female Academy,* 8 Mont. 265, and *Palmer* v. *Israel,* 13 Mont. 209, are inconsistent with some of the expressions occurring in *Heaney* v. *Butte and Moutana Commercial Co.,* 10 Mont. 590, the latter case must be considered modified in these respects.)

SAME—*Affidavit of sureties on injunction bond.*—Section 540 of the Code of Civil Procedure imposes a duty upon the person who takes an injunction bond to require the sureties to accompany it with an affidavit of solvency, but if this duty is not performed, and the affidavit is not secured, the undertaking is not therefore invalidated, but still holds, and the sureties are still liable, at least until the lack of verification,is brought to the attention of the court or judge, and action is taken thereon.

*Appeal from Ninth Judicial District, Gallatin County.*

DEFENDANT's motion to dissolve the injunction was denied by ARMSTRONG, J. Affirmed.

Statement of the case by the justice delivering the opinion:

Appeal from an order overruling a motion to dissolve an injunction issued upon the application of plaintiffs.

Plaintiffs, by complaint filed August 15, 1892, allege:

I.   That on or about September 5, 1890, plaintiff Lee filed his application for a certain tract of land in Gallatin county, Montana, under the Timber Culture Act of the United States land laws; that said filing was accepted, and plaintiff paid the fees therefor, and received a receiver's receipt for such payment; that plaintiff has, since the aforesaid date, been the owner and in possession of said land.

II.   That on or about July 1, 1891, plaintiff Lee entered into a contract with plaintiff Weinbauer, by the terms of which contract Weinbauer was to cultivate the land, and put in crops for the year 1892, and that both plaintiffs were to jointly own the crops raised on said land for the year 1892, and do so own said crops.

III.   That plaintiff Weinbauer, in order to carry out his said contract, on or about July 15, 1891, procured men, teams, and seed for the purpose of cultivating said land, and began to plow and harrow the same, but was prevented by the defendant from completing the same, and was prevented from seeding said land.

IV.   That defendant, on or about the —— day of ——, filed an application for a contest for a part of the land entered by plaintiff Lee, as aforesaid, which said application for contest was dismissed by the officials of the land-office, defendant well knowing that he had no ground for contest, and, for the purpose of hindering plaintiff and getting possession of said land, appealed to the commissioner of the general land-office, which said appeal was, on the third day of August, 1891, dismissed; and that said defendant had further harassed plaintiff [*sic*], and kept them out of possession of said land, and appealed to the secretary of the interior, who, on the sixth day of July, 1892, dismissed said appeal.

V.   That during the pendency of said application for contest, the defendant, against the protest of plaintiff, and against his will, trespassed on said land; that after the dismissal of the appeal by the commissioner of the general land-office, on the eleventh day of August, 1891, plaintiff Lee notified defendant,

in writing, to discontinue his trespassing on said land, and to remove any improvements he may have erected thereon; but, for the purpose of delaying plaintiffs, the defendant disregarded the notice, and continued to trespass on said land, and plowed and harrowed a part thereof, against the will and protest of plaintiffs; that on or about September 1, 1891, defendant began to seed said land, and plaintiffs, on the 2d of September, 1891, again notified him to cease seeding said land, but defendant disregarded the notice, and, against the will of plaintiffs, continued to trespass on and seed said land.

VI.    That on or about August 13, 1892, there was standing on said land about eighty acres of wheat, sown as aforesaid, and being the joint property of plaintiffs, which said wheat was not, on that date, and is not now, in a fit condition to harvest and thrash, and if now harvested the same will be ruined as a wheat crop.

VII.    That on or about the 13th of August, 1892, defendant commenced cutting the aforesaid crop of wheat, and plaintiffs notified him to cease cutting and interfering with said crop, and that defendant refused so to do, and threatens to cut and remove the whole of said crop of wheat, and convert the same to his own use.

VIII.    That the amount of said crop is estimated at three thousand five hundred bushels, and worth the sum of two thousand five hundred dollars.

IX.    That defendant is insolvent, and without property out of which execution could be satisfied, by reason of which, if the crop is cut in its present condition and removed, and converted by defendant to his own use, plaintiffs will suffer great and irreparable loss, and they are without an adequate remedy at law.

There was a prayer for injunction restraining defendant from cutting and removing the wheat and from trespassing on said land, and from interfering with plaintiffs' cutting and removing the wheat, and for judgment for two thousand five hundred dollars, and further relief.

Appended to the complaint was exhibit A, the receipt of the receiver for the money paid by Daniel Lee for his timber culture entry.    Exhibit B, dated July 6, 1892, was a decision of

the commissioner of the general land-office to the effect that Lee could enter the land. Exhibit D was a written notification by plaintiffs to defendant, telling him to stop trespassing, and to immediately remove any improvements or effects he might have on the ground, and that unless he did so any improvements or crops would revert to the use and benefit of the plaintiffs.

Defendant moved to dissolve the injunction, upon the ground that it was improperly issued; that no cause for the issuance of any injunction is stated in the complaint; that no such undertaking as is required by law was given or filed by the plaintiffs before the issuing of said injunction. The motion to dissolve was denied. From this order defendant appeals.

*Luce & Luce,* for Appellant.

Possession of land is denoted by the exercise of acts of dominion over it making the ordinary use of which it is susceptible. Such acts should be so repeated as to show that they were done in the character of owner. (*Williams* v. *Buchanan,* 1 Ired. 540; *Treadwell* v. *Reddick,* 1 Ired. 56; Comp. Stats., § 36; *Wolf* v. *Baldwin,* 19 Cal. 306; *Byrum* v. *Carter,* 4 Ired. 310.) It becomes a question of law from the facts stated whether or not actual possession was established. (*Davis* v. *Pearly,* 30 Cal. 644; *Polack* v. *McGrath,* 32 Cal. 15.) An action will not lie to recover grain sown and harvested by a defendant upon land to which he claimed title and of which he had the actual, adverse, and exclusive possession. (*Martin* v. *Thompson,* 62 Cal. 618.) So where one enters and ousts the owner and removes the crop, even if sown by the owner, action will not lie for the crop. (*De Mott* v. *Hagerman,* 8 Cow. 220.) And it has been held that equity will not restrain a party in possession of land from disposing of crops which he has raised upon it in favor of one who has only a technical legal right to the possession. (*Converse* v. *Ketchum,* 18 Wis. 202.) No injunction would lie at the suit of the plaintiffs Lee and Weinbauer. (High on Injunctions, §§ 28, 29; and see *Davis* v. *Hinton,* 29 Ill. App. 327; *Latham* v. *Northern Pac. R. R. Co.,* 45 Fed. Rep. 721; 10 Am. & Eng. Ency. of Law, 802, 803; *Boley* v. *Griswold,* 2 Mont. 447; *Haight* v.

*Morris Aqueduct*, 4 Wash. C. C. 601; *Cooper* v. *Mathetts*, 5
Pa. L. J. 38; *Williams* v. *McCord*, 19 Fed. Rep. 641.) Req-
uisites to entitle a party to preserve his rights as a timber
culture entryman. (See 20 U. S. Stats. at Large, 113; *Hos-
mer* v. *Wallace*, 97 U. S. 575.) An entryman who has failed
to comply with the law forfeits all right to the land, and can-
not set up his possession to defeat the application of a contest-
ant, and the contestant has the right to immediate entry.
(*Crooks* v. *Guyot*, 4 L. D. 508; *Hoyt* v. *Sullivan*, 2 L. D. 283;
*Branch Turnpike Co.* v. *Board of Supervisors*, 13 Cal. 191;
*Atherton* v. *Fowler*, 96 U. S. 513; *Shaddock* v. *Horner*, 6
C. L. O. 113, distinguished.) The decision of the secretary is
not conclusive of Watson's right. Where a party has settled
upon public land with a view to acquire a right of pre-emp-
tion, the land being open to settlement, his right thus initiated
is not prejudiced by a refusal of the local land-officers to re-
ceive his proof of settlement, upon an erroneous opinion that
the land is reserved from sale. (*Shepley* v. *Cowan*, 91 U. S.
330.) So the courts can correct injustice done by the land
officers in refusing to accord rights protected by laws in exist-
ence. (*Frisbie* v. *Whitney*, 9 Wall. 187.) Watson acquired a
right to hold the possession of the land by his settlement.
His claim under the contest was good, and he had the right to
harvest the crop sown by him without let or hindrance from
the plaintiffs. (*Rathbone* v. *Boyd*, 2 Pac. Rep. 664.) The
injunction bond was not such as is required by law. (See
Comp. Stats., §§ 137, 176, 540.)

*W. G. Fleischhauer*, for Respondents.

We claim that we have shown a title in the plaintiff, Lee, to
this land, and also that he was entitled to and in possession
thereof, and, that being the case, we contend that we have set
up an equitable case and are entitled to the relief of an injunc-
tion. An injunction will lie to avoid a multiplicity of suits (10
Am. & Eng. Ency. of Law, 881; *Coit* v. *Horn*, 1 Sand. Ch. 1),
and will lie in a proper case to restrain trespasses. (*Cox* v.
*Douglass*, 20 W. Va. 175; *James* v. *Dixon*, 20 Mo. 79; *Long* v.
*Kaseber*, 28 Kan. 226; *Vanwinkle* v. *Curtis*, 3 N. J. Eq. 422;
*Wilson* v. *Rockwell*, 29 Fed. Rep. 674; *Moore* v. *Ferrell*, 1 Ga.

7, 10.)  The insufficiency of the bond is not a ground for the dissolution of the injunction.  (*Beauchamp* v. *Supervisors*, 45 Ill. 274; *Drake* v. *Phillips*, 40 Ill. 388; *Crawford* v. *Paine*, 19 Iowa, 172; *Chesapeake etc. Co.* v. *Patton*, 5 W. Va. 234; *Woolfolk* v. *Woolfolk*, 22 La. Ann. 206.)  If an original undertaking was defective a new one could be filed without prejudice to the rights of the attaching creditor.  (*Pierse* v. *Miles*, 5 Mont. 549; *Langstaff* v. *Miles*, 5 Mont. 554.)

HUNT, J.—The plaintiff, Lee, pleads both ownership and possession.  To support the former he sets forth his application to enter the land in question, under the timber culture laws of the United States, his occupancy thereof, and a receipt of the receiver of the United States land-office at Bozeman, Montana.  Lee's application was the only authorized filing upon the tract when this suit was instituted, and, although defendant applied to contest, leave was invariably denied him.  All these facts made a *prima facie* showing of ownership and right of possession in Lee.  In *Carner* v. *Chicago etc. Ry. Co.*, 45 N. W. Rep. 713, it was decided by the supreme court of Minnesota that rights under the Timber Culture Act are as high as under the Homestead Act, that a claimant under a timber culture entry "has the right to occupy and cultivate the land, and owns the annual crops which he harvests, whether of grass not sown by him or of grains," and that, until a forfeiture to the United States occurred, he is the owner and has a right of redress for any injury to his property on the land.  Plaintiff Lee, therefore, being (as against the defendant) the legal owner, his possession, whether actual or constructive, is presumed until the contrary appears, and "is sufficient as against mere trespassers, that is, as against those who do not show some right of possession."  (*Gonzales* v. *Ross*, 120 U. S. 605.)

The defendant appears to have been guilty of repeated trespasses, plowing, seeding, and cultivating the ground, always against the warnings and instructions of both plaintiffs.  To harass them he not only attempted to contest plaintiff Lee's entry, but he protracted a vain and hopeless litigation, well knowing he had no right whatever to possession of the ground.

Plaintiffs repeatedly tried to plow and cultivate the claim, but were always interfered with by defendant. These several acts show wanton trespass, and any occupation acquired on account of them was wrongful, and without foundation of right.

It also appears that the defendant was insolvent when the injunction was granted, that he was threatening to cut and remove the crop, and that, unless restrained, plaintiffs would suffer irreparable damage. Upon the authority of *Sankey* v. *St. Mary's Female Academy,* 8 Mont. 265, we think a clear case was presented for the issuance of an injunction *pendente lite.*

The second ground in defendant's motion to dissolve was that "no such undertaking as is required by law was given or filed by the plaintiffs before the issuing of said injunction."

No specification of any defect in the undertaking itself is pointed out in the motion (as a better practice would seem to demand), but by brief of appellant's counsel it is argued that because no affidavit of the sureties accompanied the undertaking it was invalid, and that therefore the injunction was illegally issued and should be dissolved.

Section 540 of the Code of Civil Procedure, which we assume applies to all bonds, injunction as well as others, provides that: "In all cases where an undertaking by the provisions of this act is required it shall be the duty of the person taking the same to require the sureties to accompany the same with an affidavit that they are each worth the sum specified in the undertaking, over and above their just debts, liabilities, and property exempt by law from execution."

The conditions and nature of an injunction undertaking are prescribed by section 176 of the Code of Civil Procedure, and, when an undertaking has been given pursuant to said action, the liability of the sureties begins. The general statute (§ 540, above quoted) imposes a duty upon the person who takes such an un 'ertaking to require the sureties to accompany the same with an affidavit of solvency. If, however, the duty is not performed, that is, if the affidavit is not secured, it is our opinion that the undertaking is not invalidated; it still holds, and the sureties are yet liable—at least until the lack of verification is brought to the attention of the court or judge and

action taken. The affidavit is but the written declaration of the fact that the sureties who made the undertaking are responsible, confirmed by their own oaths. It is not a part, strictly speaking, of the undertaking; it does not affect its substance; it adds nothing to its terms or conditions. It should properly accompany it, but, not being a part thereof, it is not indispensable to the validity of the sureties' promise. (*Miller* v. *Pine M. Co.* (Idaho), 32 Pac. Rep. 207; Hayne on New Trial and Appeal, § 213.)

The objects of requiring the sureties to verify are, not to impose financial liability, but to create safeguards in preventing straw bonds in judicial proceedings; to require sureties to swear to their abilities to meet promises they may make in behalf of others, to the end that, if they willfully swear falsely, they may be punished for perjury; to protect the person who may take the undertaking from unwarranted imposition, and, ultimately, by strict exactions upon the consciences of sureties, to better insure the person about to be enjoined against damage or injury in any unlawful interference with his property or rights.

Appellant did not ask the court to require the sureties in this case to make the affidavit referred to in the statute, and thus cure the omission to have required it when the undertaking was given; he elected to stand upon the exclusive ground of his motion that the undertaking was a nullity. But, for the reasons already given, we hold that the lack of the affidavit was at most a curable defect which did not destroy the undertaking or invalidate the order of injunction.

The order denying the motion to dissolve is affirmed.

*Affirmed.*

PEMBERTON, C. J., concurs.

DE WITT, J., concurring.—I concur in the decision and in the opinion. Furthermore, I take this opportunity to say that, in so far as this decision, and also the decisions in *Sankey* v. *St. Mary's Female Academy, supra,* and *Palmer* v. *Israel,* 13 Mont. 209, are inconsistent with some of the expressions occurring in *Heaney* v. *Butte & M. C. Co.,* 10 Mont. 590, the Heaney case must be modified in these respects. That

case was briefed and argued on one side only, and the court was careful to say that the case was decided on its own peculiar facts. I am not even now prepared to say that the particular facts of that case did not justify the result of the decision; but I do fully concede that the language of the opinion, in any of its implications contrary to the three cases which I have above named, must be, as I have said, modified to conform to the doctrine of said three cases.