RINGLING, RESPONDENT, *v.* SMITH RIVER DEVELOPMENT CO., APPELLANT.

(No. 3,331.)

(Submitted January 8, 1914. Decided January 28, 1914.)

[138 Pac. 1098.]

*Real Property—Options—Contracts to Purchase—Pledges—Assignment—Appeal and Error—Presumptions.*

Appeal and Error—Presumptions.
    1. On appeal the presumption obtains that the trial court did not commit error, and the burden of overcoming that presumption rests upon appellant.

Real Property—Options—Pledges.
    2. Where the holder of an option to purchase lands had not paid anything upon it nor taken possession of any of them at the time he assigned it as security for a loan, he had not any interest in the lands which he could have mortgaged, but was the owner of a species of property which he could pledge.

Same—Contract to Purchase—Assignment—Equitable Mortgages.
    3. Whether the assignment of a contract to purchase land upon which part payments have been made, and of which land possession has been taken, creates an equitable mortgage upon the realty, depends upon the intention of the parties, determinable from the circumstances attending the transaction.

Same—Contract to Purchase—Pledges.

4.   The interest one has in a contract to purchase land, part payment on which he has made and of which he has taken possession, may be pledged as collateral security for the payment of a note.

[As to the law of collateral securities, see notes in 49 Am. Dec. 730; 32 Am. St. Rep. 711. As to distinction between pledge and chattel mortgage, see note in Ann. Cas. 1912B, 962.]

*Appeal from District Court, Lewis and Clark County; J. Miller Smith, Judge.*

Suit by John Ringling against the Smith River Development Company. Judgment for plaintiff, and defendant appeals. Affirmed.

*Messrs. Walsh, Nolan & Scallon,* for Appellant, submitted a brief; *Mr. William Scallon* argued the cause orally.

The agreements between plaintiff and defendant effected and constituted liens and mortgages on real property, to wit, on interests in real estate and the district court in and for Lewis and Clark county had no jurisdiction of the action.

Exhibit ''A'' (the Catlin contract) is a bilateral contract. It comes, in all respects, within the rules stated in Story on Equity Jurisprudence, ninth edition, section 790, as follows: ''If a man has entered into a valid contract for the purchase of land, he is treated in equity as the equitable owner of the land, and the vendor is treated as the owner of the money. The purchaser may devise it as land, even before the conveyance is made, and it passes by descent to his heir as land. The vendor is deemed in equity to stand seised of it for the benefit of the purchaser; and the trust attaches to the land, so as to bind the heir of the vendor, and every one claiming under him as a purchaser, with notice of the trust.'' (See, also, 1 Warvelle on Vendors, 185–188; 39 Cyc. 1302; Pomeroy on Equity Jurisprudence, sec. 1261; 28 Am. & Eng. Ency. of Law, 703.)   As to Exhibit ''B'' (the Mayn & Heitman contract) : ''If it was merely an option at its inception, it soon developed, by virtue of its own provisions, into much more than a mere option.   It resulted in placing the legal title in trust for the purchaser, for

as a result of the contract, we find that the title was to be conveyed, and presumably was conveyed, to a trustee for and to the use of the vendee.   Evidently, the conveyance was in trust.

We, therefore, submit that under both contracts the title was held in trust for the vendee.   It matters not that the trustee was a third party, instead of the vendor himself.   Indeed, that very fact adds strength to our contention.   In a number of the cases cited in the authorities above referred to, bonds for title are given the same force and effect as a contract for sale and purchase.   Surely, such a contract as we are now considering, accomplished by a transfer of title from the vendor to a third party in trust for and to the use of the vendee, with the right of possession in the latter, ought to be as effective.

"A contract giving an option to purchase land will work a conversion of the land, though not exercised until after the death of the vendor." (7 Am. & Eng. Ency. of Law, 471, 475, 476; *Kerr* v. *Day,* 14 Pa. 112, 53 Am. Dec. 526; *Merritt* v. *Judd,* 14 Cal. 60, 6 Morr. Min. Rep. 62; *Hill* v. *Eldred,* 49 Cal. 398; *Sinclair* v. *Armitage,* 12 N. J. Eq. 174.) In addition to the foregoing we also refer especially to the authorities, cited below, dealing with equitable mortgages.

What, then, was the nature of the mortgage or lien? The answer is readily found in 11 Am. & Eng. Ency. of Law, 130.

"As a general rule, an assignment by the vendee of a contract for the purchase of land, made as a security for a debt, makes the assignee an equitable mortgagee." (See, also, 1 Jones on Mortgages, 5th ed., sec. 136.)

"An assignment by the vendee of a contract of purchase of land as security for a loan may be regarded as an equitable mortgage.   The rules applicable to a mortgage of real property govern it both as to the effect of it and the mode of enforcing it." (*Id.,* sec. 172; *Brockway* v. *Wells,* 1 Paige Ch. (N. Y.) 617, s. c., with note, in 2 Lawyers' Reprint N. Y. Chancery Reports, 773; 27 Cyc. 981.)

The liens and mortgages, being on an interest in real estate, could only be foreclosed in the county of Meagher, in which the

real estate was and is situated. (Const., Art. VIII, sec. 11; Rev. Codes, sec. 6501; *Urton* v. *Woolsey,* 87 Cal. 38, 25 Pac. 154; *Fritts* v. *Camp,* 94 Cal. 393, 29 Pac. 867; *Campbell* v. *West,* 86 Cal. 197, 24 Pac. 1000; *Pacific Yacht Club* v. *Sausalito B. W. Co.,* 98 Cal. 487, 33 Pac. 322; *Duffy* v. *Duffy,* 104 Cal. 602, 38 Pac. 443.)

The statutory right to redeem is a substantial right which cannot be denied to the judgment debtor. (*Parker* v. *Dacres,* 130 U. S. 43, 32 L. Ed. 848, 9 Sup. Ct. Rep. 433; *Brine* v. *Hartford Fire Ins. Co.,* 96 U. S. 627, 24 L. Ed. 858.)

*Messrs. H. G. & S. H. McIntire,* for Respondent, submitted a brief; *Mr. H. G. McIntire* argued the cause orally.

"The instruments in writing which evidence the transactions between the parties will not be held to constitute a mortgage unless the evidence shows that they were so intended by the parties, and the burden of proof in that regard is upon the plaintiff," *i. e.,* the party asserting a mortgage was intended. (*Morris* v. *Nyswanger,* 5 S. D. 307, 58 N. W. 800, citing *Wallace* v. *Johnstone,* 129 U. S. 58, 32 L. Ed. 619, 9 Sup. Ct. Rep. 243; *Hanford* v. *Blessing,* 80 Ill. 188; *Stahl* v. *Dehn,* 72 Mich. 645, 40 N. W. 922; *Smith* v. *Crosby,* 47 Wis. 160, 2 N. W. 104.) "In distinguishing a pledge from other transactions, courts will endeavor to ascertain from the contract the intention of the parties and to give it effect." (31 Cyc. 788.) "In case of doubt whether a transaction by which personal property is given as security is a pledge, or is a sale, mortgage, or absolute assignment, the law favors the conclusion that it is a pledge." (*Id.,* 797.)

The words "collateral security" are but synonymous with the legal expression "pledge." (Schouler on Bailments, 160; 31 Cyc. 786.) Any valuable thing of a personal nature is the subject of a pledge. The books contain numerous illustrations, *e. g.,* title deeds, leases of real property, deeds, mortgages of real property, judgments, rights or choses in action, *etc.*

(See 4 Lawson's Rights and Remedies, sec. 1756; Schouler on Bailments, 167; 31 Cyc. 793; Boone on Mortgages, sec. 289.)

The case of *Gardner* v. *McClure,* 6 Minn. 250, where one indebted on a promissory note had deposited with the payee as security the title deed to real estate, accompanied by a writing which the latter, regarding it as a mortgage on the lands described, brought suit to foreclose, disposes of the contention of respondent that the contracts in this case constituted equitable mortgages. The subject of equitable mortgages arising from the deposit of title deeds is learnedly gone into by the court, which shows that it is an anachronism of the English system, is violative of the statute of frauds, and is generally repudiated in the United States. Another learned decision in opposition to the notion is that of *Bloomfield State Bank* v. *Miller,* 55 Neb. 243, 70 Am. St. Rep. 381, 44 L. R. A. 387, 75 N. W. 569, where the cases are fully reviewed, and which is directly in point. The matter is, however, of no moment in Montana, nor do the cases referred to in appellant's brief have any bearing, for here the matter is settled by statute. Under section 5749, Rev. Codes, "a mortgage of real property can be created, renewed or extended, only by writing, with the formalities required in the case of a grant of real property." (*Wilson* v. *Pickering,* 28 Mont. 435, 72 Pac. 821.)

In order to sustain its contention, therefore, that in the transaction with respondent it had given him a mortgage on interests in real property, it was incumbent on the appellant both to plead and show by evidence an instrument in writing, duly executed by it, sufficient in form and substance to comply with the said statute. This it has failed to do.

That Exhibit "A" does not create an equitable title, see 1 Warvelle on Vendors, 2d ed., sec. 176; *Smith* v. *Jones,* 21 Utah, 270, 60 Pac. 1104, 1106.

Exhibit "B" is but an option or privilege to purchase. It contains no covenant or obligation on the part of the party of the second part thereto to do anything thereunder, and in that regard is unilateral. As to such agreements, and indeed, even

as to such set forth in Exhibit "A," the case of *Ide* v. *Leiser,* 10 Mont. 5, 24 Am. St. Rep. 17, 24 Pac. 695, is conclusive. Under an option, the optionee acquires no land nor interest in land, but he does obtain what is often of much value, the privilege at his election to demand and receive the conveyance of land. (*Myers* v. *Stone,* 128 Iowa, 10, 111 Am. St. Rep. 180, 102 N. W. 507; *Sweezy* v. *Jones,* 65 Iowa, 272, 21 N. W. 603; *Gustin* v. *Union School Dist.,* 94 Mich. 502, 34 Am. St. Rep. 361, 54 N. W. 156; *Jackson* v. *Sessions,* 109 Mich. 216, 67 N. W. 315; *Clarno* v. *Grayson,* 30 Or. 111, 46 Pac. 426; *Sheehy* v. *Scott,* 128 Iowa, 551, 4 L. R. A. (n. s.) 365, 104 N. W. 1139; *Smith* v. *Jones,* 21 Utah, 270, 60 Pac. 1104; *Clark* v. *American D. & M. Co.,* 28 Mont. 468, 72 Pac. 978; *Snider* v. *Yarbrough,* 43 Mont. 203, 115 Pac. 411.) Under these decisions, and particularly under Revised Codes, sections 4430, 4590, 4912, 4556, the agreement evidenced by Exhibit "B" can be regarded only as a personal right or privilege, *i. e.,* as personal property, is transferable either by pledge, or otherwise, and its situs is at the residence of the owner.

This brings us to the contention of appellant, that the lower court had no jurisdiction of the present action; in other words, that respondent's action is local, and can only be maintained in Meagher county. We understand the rule to be that: "Where the relief sought does not require the court to deal directly with the estate itself, the proceeding does not affect real estate" (*Hayes* v. *O'Brien,* 149 Ill. 403, 23 L. R. A. 555, 37 N. E. 73; *Munger* v. *Crowe,* 219 Ill. 12, 76 N. E. 50; *Anaheim Odd Fellows' Hall Assn.* v. *Mitchell,* 6 Cal. App. 431, 92 Pac. 331), and "the principal question involved in a case is the one which determines whether the action is local or transitory." (8 Current Law, 2236.) One of the leading California decisions, wherein the statutes of that state on the subject are considered and construed, is *Smith* v. *Smith,* 88 Cal. 572, 26 Pac. 356. There and in many cases since the rule was stated and followed, that only in those cases which are strictly and exclusively local, and which have no feature of transitory actions, does California section

392 (Rev. Codes, sec. 6501) apply. Wherever personal relief against the defendant is also sought sec. 395 (Rev. Codes, sec. 6504) is the controlling statute. See *Warner* v. *Warner,* 100 Cal. 11, 34 Pac. 523, *Smith* v. *Smith,* 4 Cal. Unrep. 860, 38 Pac. 43, *Booker* v. *Aitken,* 140 Cal. 471, 74 Pac. 11, *Anaheim Odd Fellows' Hall Assn.* v. *Mitchell,* 6 Cal. App. 431, 92 Pac. 331, *Samuel* v. *Allen,* 98 Cal. 406, 33 Pac. 273, *Miller & Lux* v. *Kern County Land Co.,* 140 Cal. 132, 73 Pac. 836, wherein the cases cited by appellant are distinguished (*White* v. *Adler,* 5 Cal. Unrep. 215, 42 Pac. 1070); and see *Le Breton* v. *Superior Court,* 66 Cal. 27, 4 Pac. 777; *Hayes* v. *O'Brien,* 149 Ill. 403, 23 L. R. A. 555, 37 N. E. 73; *Munger* v. *Crowe,* 219 Ill. 12, 76 N. E. 50; *State ex rel. Schatz* v. *District Court,* 40 Mont. 173, 105 Pac. 554.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On October, 28, 1910, the Smith River Development Company, a Montana corporation, with its principal place of business at Helena, executed and delivered to John Ringling its promissory note for $16,000, due six months after date with interest at eight per cent per annum. About the same time it procured a contract for the purchase of certain lands in Meagher county known as the Catlin lands, payment for which was to be made in installments covering a period extending to February, 1914. The defendant, having paid two installments due upon the contract, went into possession of the land, and thereafter, on December 28, 1910, by an instrument in writing it transferred, set over, and delivered to Ringling the Catlin contract, with all its right, title, and interest therein, as collateral security for the payment of the note above. About the same time it also secured an option in writing to purchase the Mayn & Heitman ranches in Meagher county, upon installments extending to May, 1915, and on February 9, 1911, it assigned, set over, transferred, and delivered this instrument, with all its right, title and interest therein, to Ringling as further collateral security for the pay-

ment of the same note; $5,519.58 was paid upon the indebtedness in June, 1911, and, no further payments having been made, this suit was instituted in 1912 in Lewis & Clark county to secure a judgment for the balance due and a decree foreclosing the defendant's interest in the securities mentioned. A demurrer for want of jurisdiction was interposed and overruled, and the defense of want of jurisdiction was made in the answer. The plaintiff prevailed upon the trial and secured a decree fixing the amount due, and directing the sheriff to sell the securities mentioned, upon five days' notice, and to execute to the purchaser a certificate of sale without the right of redemption. This appeal is from the judgment, and the record presents only the pleadings, the decree and the notice of appeal.

We have purposely omitted reference to many matters contained in the pleadings, which, while proper for consideration in the district court, do not reflect in any manner upon the question before us.

If the assignment of the contract in the one instance, and the option in the other, conveyed to Ringling an interest in land as security for the debt due, the transactions amounted to a real estate mortgage which could only be foreclosed in a suit instituted in Meagher county, and in that event the defendant would be entitled to the statutory period of redemption. If we were called upon to determine the character of the security given to Ringling, our inquiry would be limited to construing the agreement made on December 28, 1910, when the contract was assigned, and also, the agreement of February 9, 1911, by which the option was transferred as further security; but that is not the question before us. The trial court held that those agreements resulted in Ringling receiving into his possession the contract and option as personal property, delivered in pledge as security for the payment of the $16,000. We enter upon our [1] investigation indulging the presumption that the trial court did not err, and the appellant must assume the burden of overcoming that presumption. (*Toole* v. *Weirick,* 39 Mont. 359, 133 Am. St. Rep. 576, 102 Pac. 590.) In the absence of

any evidence disclosing the circumstances under which the securities were given, or reflecting the intention of either the debtor or the creditor, and, indeed, in the absence of the writing assigning either the contract or the option, appellant must assume the burden of showing that the trial court's conclusion is erroneous under any possible state of facts consistent with the declaration of the record that by an instrument in writing, duly executed by it, the defendant assigned, transferred, and delivered the contract in the one instance, and the option in the other, as collateral security for the payment of a debt. So far as this record discloses, the defendant company had not paid anything upon the Heitman option, and had not taken possession of any [2] of the lands described in that instrument at the time the option was assigned, and therefore it did not have any interest in the lands themselves (*Smith* v. *Jones,* 21 Utah, 270, 60 Pac. 1104), and could not have given a real estate mortgage upon them or upon any interest in them (*Provident Life & Trust Co.* v. *Mills* (C. C.), 91 Fed. 435). It did, however, have the right to purchase, and that right may have been valuable. (*Ide* v. *Leiser,* 10 Mont. 5, 24 Am. St. Rep. 17, 24 Pac. 695.) It was such a species of property as might be sold, transferred, or assigned (*Winslow* v. *Dundom,* 46 Mont. 71, 125 Pac. 136), and, being personal property, it could be pledged. When the record discloses that the option (the writing) was actually delivered to Ringling as security for his note, it would seem that a pledge was created, within the meaning of sections 5774 and 5775, Revised Codes. In any event, the appellant has failed to overcome the presumption in favor of the correctness of the trial court's ruling, so far as the option is concerned.

Although the subject is a debatable one, we may assume, without deciding, that by reason of making certain payments upon the Catlin contract and taking possession, the defendant had acquired an equitable interest in the land prior to the time the contract was assigned to Ringling. If so, it is very clear that such an interest could be mortgaged. We may further assume [3] that the assignment of such a contract, as security for the

payment of a debt, would, generally speaking, create an equitable mortgage upon real estate. Still that result does not necessarily follow. ''But here, as in other cases, the question whether the transaction creates an equitable mortgage depends upon the intention of the parties in that behalf, and this is to be determined by a consideration of the circumstances attending it.'' (27 Cyc. 981.) While our attention has not been directed to any case directly in point, our conclusion is fortified by the **[4]** logic of analogous cases. The authorities seem quite uniform in holding that a lease of, or mortgage upon, real estate may be pledged (*Dewey* v. *Bowman,* 8 Cal. 145; Jones on Pledges and Collateral Securities, sec. 143; Denis on Contracts of Pledge, 56; Colebrooke on Collateral Securities, 3·), and we see no difference in principle between the pledge of a lease and the pledge of a contract to purchase land. If the parties so intended, they might have created a real estate mortgage by complying with the provisions of section 5749, Revised Codes, but whether the assignment in this instance contained the formalities required in the case of a grant to real property we have no means of knowing. The assignment is not set forth in the pleadings, but so far as we are able to determine its character from the description given, it did not pretend to transfer any interest in the land itself (*Gardner* v. *McClure,* 6 Minn. 250 [Gil. 167]), but referred only to the contract and to the defendant's interest in it. If this be true, then we are of the opinion that the defendant's interest in it was such that the contract might have been pledged.

Since it is possible that these transactions might have constituted a pledge of each of these instruments, the appellant has failed to overcome the presumption attaching to the judgment of the district court, and for this reason that judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.