GIBBONS, Respondent, *v.* HUNTSINGER, Appellant.

(No. 7,712.)

(Submitted November 15, 1937. Decided December 7, 1937.)

[74 Pac. (2d) 443.]

Mr. *David J. Ryan,* for Appellant, submitted a brief, and argued the cause orally.

Mr. *D. W. Doyle* and Mr. *W. E. Arnot,* for Respondent, submitted a brief; Mr. *Doyle* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

In June, 1934, the parties to this controversy entered into an agreement, evidenced by a written contract, by which the defendant entered upon the lands involved for the purpose of preparing the fields for seeding the following year and farming the same for a specified part of the crop. It does not appear that any disagreement arose about the relationship between the parties in the year 1935. The written contract, later adverted to, provided it should terminate December 1, 1935, that defendant would without notice vacate the premises, and further provided that the contract could not be altered or renewed without indorsement thereon in writing signed by both parties. Notwithstanding such renewal provision, it was subsequently verbally agreed that the defendant should continue farming the lands for the year 1936, under the provisions of the written lease for the prior season. August 29, 1936, plaintiff served notice upon the defendant in writing to vacate the premises within three days after service of such notice, alleging the lease was terminated by breach of the defendant, and specifying a number of covenants of the written lease that defendant had violated to the injury of the plaintiff, setting out the amount of the alleged injury in each instance, aggregating $1,300, for which damages were prayed in treble the amount as provided, for "occupation, unlawful detention and holding out of same." Judgment is also prayed for in the sum of $500 for the rents and profits of the land, for costs of suit, and for a restraining

order restraining the defendant from farming the premises during the pendency of the action.

Upon filing the complaint, April 5, 1937, it appears that a restraining order and an order to show cause were issued as prayed for, the latter made returnable April 19. Neither of these orders appears in the record. Defendant filed his answer April 10, and at the same time gave notice of and filed a motion to dissolve the restraining order.

Some disagreement arose between counsel for defendant and the court as to just what should be considered at the hearing of April 19, and the court stated: ''The temporary restraining order was issued upon the allegations of the complaint. Of course, you have met those by answer, but the hearing is not upon the merits, but it is upon the question whether or not a temporary injunction should be granted, or the temporary restraining order should be continued.'' The court then denied the motion to dissolve and directed counsel for defendant to proceed, which counsel had previously objected to doing on the ground that the burden of proof was upon the plaintiff. Defendant was allowed an exception and counsel again directed to proceed. Defendant predicates his third assignment of error on this ruling.

A copy of the notice to vacate is made Exhibit A, attached to and made a part of the complaint. Five specific breaches of the agreement by the defendant are alleged in the notice, as follows: That defendant had failed to make proper accounting of the grains raised on the premises for the season of 1936; had failed and refused properly to summer-fallow the lands in 1936; had failed and refused to remove the refuse and manure from around the buildings; had failed to make proper repair of fences and buildings; and had failed and refused to keep noxious weeds under control. Specific damages to plaintiff are alleged by reason of each breach in the aggregate sum heretofore mentioned. It is then alleged that the defendant is in possession of the premises, threatens and intends to remain in possession and farm the lands for the year 1937, and will do so unless restrained by order of the court. It is further alleged

that defendant is insolvent, that plaintiff has no adequate remedy at law, and that plaintiff will suffer irreparable damages if defendant is allowed to remain upon the premises and farm the same for 1937.

The answer admits that defendant is in possession of the premises and intends to farm same for the season of 1937; alleges that he is rightfully in possession by reason of holding over for more than sixty days after the expiration of his former tenancy without notice to vacate; that the notice of August 29, 1936, was premature and ineffective; that plaintiff waived any right she may have acquired by such notice in not instituting legal action to regain possession of the premises within a reasonable time after giving such notice; that plaintiff is estopped from ousting defendant for the further reason that he was led to believe that it was agreeable to plaintiff for him to farm the premises for 1937, and that defendant had provided seed for seeding the land and made other preparations in connection therewith; that he received no notice of any breach of contract or notice "to repair any of the covenants alleged to have been broken," and, by reason of the foregoing laches of plaintiff, defendant is entitled to hold the premises for one year or until December, 1937. Defendant denies that he is insolvent, but, on the contrary, has credit and property amply sufficient to meet and discharge any claims legally established against him; and specifically denies all allegations of the complaint upon which damages to plaintiff are predicated. As a further defense and counterclaim it is alleged that defendant summer-fallowed 166 acres of the lands in 1936, and that such labor and services are of the reasonable value of $5 per acre; that in the year 1935 he performed services for the plaintiff, at her special instance and request, in building a reservoir, which are of the reasonable value of $150; and prays that he be given judgment for $830 for the summer-fallowing, $150 for the labor on the reservoir, his costs herein, and that the action be dismissed. The affirmative matter of the answer is traversed by reply.

Upon the termination of the hearing the court took the matter under advisement, and on April 22, 1937, made the following order: "An order having heretofore, to-wit: on the 5th day of April, 1937, issued in the above entitled action, requiring the defendant to be and appear before this court at the hour of 10:00 o'clock A. M., on the 19th day of April, 1937, then and there to show cause why he, his agents, servants and employees should not be enjoined and restrained during the pendency of said action from operating, farming or interfering with farming of the land mentioned in said complaint, and the hearing on same having been had, and the court being fully advised in the premises.

"Now Therefore, it is ordered, adjudged and decreed, that, during the pendency of this action, until the final determination thereof or until the court should otherwise order, the defendant and his agents, servants and employees desist and refrain from farming said premises or interfering with anyone sent there by this court, or the owner of said farm, to farm the same, and that the real property is described as follows: [Here follows a description of the lands involved.] Dated this 22nd day of April, 1937."

Defendant appeals from this order, from the order denying his motion to dissolve the restraining order of April 5, 1937, and from the judgment.

Defendant's assignments of error, five in number, are in substance as follows: The court erred in issuing the temporary restraining order; in not granting the motion to dissolve; in placing the burden of proof upon the appellant; in making the restraining order permanent; and in entering judgment for plaintiff.

The chief question, and, in the final analysis, the only question we are required to decide here, is whether the restraining order issued April 22, 1937, was legally issued or not, but many other questions, incidental to such chief question, are involved and will require consideration.

The allegations contained in the pleadings, in so far as they affect the merits of the controversy, are not before us by the

appeal and will not be considered any further than it is necessary to determine the legality of the court's action in issuing the restraining order just mentioned.

It is quite obvious that the parties are in doubt about whether their respective rights arise under the written contract of June, 1934, or whether they are governed by the statutes and rules of law applicable to landlord and tenant. Paragraph II of the complaint alleges that the parties entered into a verbal lease in 1936, whereby defendant agreed to farm the lands for the farming season of that year, and such lease appears to be the foundation of this action; but in alleging violation of covenants plaintiff specifies the covenants contained in the written lease of 1934, with the obvious notion that defendant held over for the year 1936 under the 1934 agreement.

Defendant contends he had a right to farm the lands for the 1937 season and to hold until December of that year, which shows clearly that he too assumed that he was in possession of the premises under the 1934 lease, as he relied on the date of termination fixed by that agreement, and testified that his holding over entitled him to possession until December 1, 1937, according to the terms of the old agreement. Both parties testified that the verbal understanding was that the farming for the 1936 season should be carried on under the terms of the written lease of 1934 governing the farming operations for the 1935 season. Under the circumstances as shown in this regard, we think the old written agreement must control here, for it supplies the best evidence of the mutual intentions of the parties, and such will be our decision irrespective of anything subsequently said or done by either to the contrary.

It is, in a measure, essential in applying the established rules to the questions involved in the action at bar, to fix the legal status of the defendant. He is a cropper, not a tenant, having that status by reason of the provisions of his agreement with the plaintiff; but, whether cropper or tenant, he is precluded from maintaining most, if not all, of his material contentions put forward in his defense. He, as well as the plaintiff, is bound by the agreement, but, as a cropper, defendant may

not claim the right to require the notice to vacate that the tenant, in the absence of contract, would have under the statutes. The "cropper" is not elevated to the dignity of a tenant (one who has an estate in the land), but is what is characterized as a "sublimated employee" (a status between a tenant and an ordinary employee); something more than an ordinary employee, but still an employee whose wages come from a share of the crop he produces according to agreement with the land owner, which share the land owner sets aside for him.

Beginning with the case of *Cook-Reynolds Co.* v. *Wilson*, 67 Mont. 147, 214 Pac. 1104, a distinction has been made between a cropper and a tenant in this jurisdiction which had theretofore quite generally maintained in other jurisdictions. The general rule is laid down in 8 R. C. L., p. 374, as: "The difference between a cropper and a tenant is that a tenant has an estate in the land for the term, and consequently has a right of property in the crop. If he pays a share of the crop for rents, it is he who divides the crop and turns over to the land owner his share, and until such division the right of property and of possession in the whole is his. A cropper has no estate in the land, and although he has in some sense the possession of the crop, it is only that of a servant, and the possession is in law that of the land owner, who must set off to the cropper his share." In the *Cook-Reynolds Case* the contract there involved was held to be a lease, even though some of its provisions were more appropriate to a contract with a cropper. In *Kester* v. *Amon*, 81 Mont. 1, 261 Pac. 288, the person who produced the crop was held to be a tenant, and not a mere cropper, where he furnished the seed, all the labor and material, and had the right to divide the crop when it was harvested.

In *Wells-Dickey Co.* v. *Embody*, 82 Mont. 150, 163, 266 Pac. 869, 874, the distinction between a cropper and a tenant is clearly made. It was there said: "The agreement recites that the company, as owner, or agent for the owner, of the land agrees to 'lease' it to O'Brien for the season of 1925, the latter agreeing to 'till and farm' the land and produce a crop therefrom; but he is accorded merely the privilege of living upon

the land and occupying the buildings thereon for the purpose of caring for the crops—'legal possession and right of possession to remain in the first party.' It requires O'Brien to give five days' notice before threshing the grain, which he is only allowed to store and not to sell, and provides that, on full performance and 'upon reasonable request, first party [the owner or its agent] will deliver to the second party [the producer], at the place where they may be stored, legal right of possession to * * * three-fourths of the crops produced.' * * * Here we have a contract in which the parties declared their intention in no uncertain terms; possession and right to possession of the land and title to the crops were to remain in first party, who, on completion of the contract, would deliver three-fourths of the crops produced to the producer as payment for his labor and investment. Such an agreement is but a contract of employment; it is the converse of the usual farm lease on crop rental, under which the tenant is held to be in possession of the land and the owner of the crop. Here the producer of the crop is but a 'cropper' or sublimated employee; his possession is that of his employer, and, until division is made, title to the crop remains in the employer.'' This case clearly distinguishes between the tenant and cropper of farm lands. The rule was followed in *Union Central Life Ins. Co.* v. *Audet,* 94 Mont. 79, 88, 21 Pac. (2d) 53, 55, 92 A. L. R. 571, where it was said: ''Possession and right to possession of the premises and title to the crops were to remain in the first party, the plaintiff; the division of the crops was to be made by the plaintiff, and then only upon final settlement at the end of the year. In this situation the defendants were in legal aspect but 'sublimated employees.' ''

The agreement here imposes upon the defendant all the burdens that attach to a ''cropper'' as determined by the decision in the *Wells-Dickey Company Case*: ''Legal possession and right of possession to [shall] remain [at all times] in the first party,'' the plaintiff; defendant may live upon the premises and occupy the buildings but ''only for the purpose fairly appertaining to farming''; defendant may graze not to exceed ten horses and

ten cows of his own on the premises; title and right to possession to all the crops and produce of the premises shall remain in the plaintiff until all covenants defendant is required to perform shall have been performed, and plaintiff will then set aside to defendant two-thirds of the products produced upon the premises. Hence, "in legal aspect," the defendant is a cropper.

As heretofore mentioned, defendant predicates error upon the court's requiring him to proceed first with his proof on the presumption that the burden was upon the defendant. The rule is that the burden of proof is on the party having the affirmative of the issue. (Sec. 10616, Rev. Codes; 22 C. J. 68; *Kohlsaat* v. *Parkersburg & M. Sand Co.,* (C. C. A.) 266 Fed. 283, 11 A. L. R. 686; *Smith* v. *Hill,* 232 Mass. 188, 122 N. E. 310, 2 A. L. R. 1667.) The rule may be stated, also, that it is always upon the plaintiff to establish every allegation of fact essential to gain the relief prayed for, and many authorities hold that the burden never shifts. It is conceded, however, that the burden of going forward with the evidence shifts from one side to the other as the trial progresses. The plaintiff in the beginning having made a prima facie case, the burden is then upon the defendant to overcome the case made against him, but in the final analysis, in a case such as that at bar, the determination of the question depends upon whether the evidence as a whole preponderates in favor of the one or the other. We think the burden was upon the plaintiff to show that the restraining order was necessary to protect the plaintiff's property from injury until the controversy could be heard and determined upon the merits; but we are also of the opinion that it is largely discretionary with the trial judge as to which party shall be required to go forward with his proof, and if, on appeal, it is shown that the judge acted arbitrarily and that such arbitrary action was prejudicial to the complaining party, such injured party is entitled to relief.

We are of the opinion that the error assigned on this point has not been supported by a showing of prejudice resulting in injury to the defendant. The assignment of error must be

material. It must appear that the error affected the substantial rights of the party to work reversal, and error is never presumed. (Sec. 9191, Rev. Codes; *Olson* v. *City of Butte,* 86 Mont. 240, 283 Pac. 222, 70 A. L. R. 1352.) In reviewing the decision the rulings and judgment of the trial court will be presumed correct, unless the record shows affirmative error. (*Toole* v. *Weirick,* 39 Mont. 359, 102 Pac. 590, 133 Am. St. Rep. 576; *In re Myer's Estate,* 92 Mont. 474, 15 Pac. (2d) 846; *Ringling* v. *Smith River Dev. Co.,* 48 Mont. 467, 138 Pac. 1098; *Smith* v. *Collis,* 42 Mont. 350, 112 Pac. 1070, Ann. Cas. 1912A, 1158.)

Taking up the contractual obligations of the parties, we must first look to the contract itself to determine what the respective obligations are. Under the subheading "Termination," the contract provides: "The term of this agreement commenced with the date hereof [June 23, 1934] and ends without notice on the 1st day of December, 1935, unless sooner terminated as herein provided. It is mutually agreed by the parties herein, that if the party of the second part shall sell or assign this contract or his rights hereunder, or use said premises for any other purposes than as herein provided for, or fails or neglects to perform each and all of the covenants herein contained, on his part to be kept and performed, in time and manner as herein provided (time being the essence of this agreement), then this contract shall at the option of the first party be terminated, and after ten days' notice served on second party, giving notice of such termination, and requiring second party to vacate said premises, said first party may re-enter and retake full and complete possession of all of said premises." Another provision, under the heading "Vacate Premises," provides: "Second party agrees at the termination of this agreement that he will at once remove his entire property from the premises peacefully and without notice or process of law. Where second party does not immediately remove from said premises as herein provided, his continuing to remain thereon shall not be construed as renewing this contract, or giving him any rights hereunder."

Statutory provisions affecting contracts are enacted to fix ██ rules of conduct the parties shall be governed by in such matters as the contracting parties have not fully provided for in their agreement. Where particular obligations are placed upon a party by the agreement, there is no need to consult the statutes to see what they provide in respect to such obligations. The provisions of the statutes "in respect to the rights and obligations of parties to contracts are subordinate to the intention of the parties," and any party may waive any right he is entitled to under the statutes if public policy be not involved. (Sec. 8597, Rev. Codes.)

Freedom of contract is one of the fundamental liberties of ██ the individual, and is protected by the due process clause of both the state and federal Constitutions. (*Great Northern Utilities Co.* v. *Public Service Com.,* 88 Mont. 180, 188, 293 Pac. 294; *Adkins* v. *Children's Hospital of D. C.,* 261 U. S. 525, 43 Sup. Ct. 394, 67 L. Ed. 785, 24 A. L. R. 1238.) The parties here were at liberty to make such contract as they chose; courts have no right to make contracts for them. (*Story Gold Dredging Co.* v. *Wilson,* 99 Mont. 347, 42 Pac. (2d) 1003, and cases cited.)

The parties here provided by agreement that it should terminate December 1, 1935, without notice. Later they verbally mutually agreed to continue for another cropping season under the same contract, and such verbal contract waived that provision of the old contract requiring renewal thereof to be in writing signed by the parties (sec. 8597, Rev. Codes; *Tay-Holbrook Co.* v. *Tutt,* 218 Cal. 600, 24 Pac. (2d) 463), but both parties are otherwise bound by the contract. It therefore follows that the notice of August 29, 1936, to vacate was ineffective, for the reason that it demanded that defendant vacate within three days for alleged violation of certain covenants, whereas the notice for that purpose fixed by the parties in the agreement was ten days. The notice provided by contract must prevail. Defendant therefore was not obliged to vacate until December 1, 1936, but was obligated to vacate on that date and without notice, as the agreement fixed that date as and for the

termination of his right to occupy the premises. Defendant's refusal to observe this provision of the agreement made him a trespasser.

The evidence here clearly establishes the fact that defendant is insolvent; that he violated his agreement in remaining in possession against plaintiff's wishes, in disposing of the crops produced upon the premises without consulting the plaintiff, and in pasturing livestock belonging to others when he was restricted to not exceeding twenty head of his own. The evidence as to the other alleged breaches of contract by defendant is in conflict, and, under the rule, the trial court's conclusions will not be interfered with here. In addition, defendant admits in his answer that he was in possession of the premises, intended to remain in possession and farm the land for the season of 1937. The facts and circumstances involved in the case of *Union Central Life Insurance Co.* v. *Audet,* supra, are nearly on all fours with those here, and the forcible expressions and conclusions of the court there are adopted here. It was there said: "The contract having been breached by the defendants, and they being in default, the plaintiff had the right under its specific terms to eject them from the premises. Certainly after demand was made by plaintiff upon defendants for the possession of the premises, they were no longer rightfully in the occupancy thereof. (*Kelly* v. *Roberts,* 93 Mont. 106, 17 Pac. (2d) 65.) They were trespassers.

"The general rule is that a court of equity will not exert its power to enjoin a trespass when there is an adequate remedy at law. (*Thrasher* v. *Hodge,* 86 Mont. 218, 283 Pac. 219.) It will not enjoin a mere trespass. (*Musselshell Cattle Co.* v. *Woolfolk,* 34 Mont. 126, 85 Pac. 874; *King* v. *Mullins,* 27 Mont. 364, 71 Pac. 155.) It is the rule also that 'title to or right of possession of real estate is not triable by injunction.' (*National Bank of Montana* v. *Bingham,* 83 Mont. 21, 269 Pac. 162, 167.) And 'an injunction will not be used to take property out of the possession of one party and put it into that of another.' (*Lacassagne* v. *Chapuis,* 144 U. S. 119, 12 Sup. Ct. 659, 661, 36 L. Ed. 368; *Blinn* v. *Hutterische Society of Wolf Creek,*

58 Mont. 543, 194 Pac. 140.) Nevertheless relief will be granted by injunction to protect the owner of land whose right to possession is unquestioned 'against a repetition of wanton trespasses for which adequate compensation cannot be given by way of damages,' as this court declared in *City of Bozeman* v. *Bohart*, 42 Mont. 290, 112 Pac. 388, 391, following *Lee* v. *Watson*, 15 Mont. 228, 38 Pac. 1077. * * *

"The ancient doctrine against the use of the writ to enjoin trespasses has been modified with the passing years. In his monumental work on Equity Jurisprudence, Mr. Pomeroy observes that trespasses to realty, when they consist of single acts, or occasional acts which are temporary in their nature and effect, and which are of such nature that damages as estimated by a jury will be adequate restoration, will not be enjoined; on the other side, 'speaking affirmatively of the many cases in which trespasses to realty are enjoined,' he divides them into four classes, two of which are: (2) When the legal remedy is inadequate because the trespass is continuous, or because repeated acts of wrong are done or threatened, although each of these acts, taken by itself is not destructive; (3) when the legal remedy is inadequate because the defendant is insolvent. (5 Pomeroy's Eq. Jur., 2d ed., sec. 1908; and see exhaustive note to *Sanders* v. *Boone*, 154 Ark. 237, 242 S. W. 66, 32 A. L. R. 461, 464 et seq.) The present case falls directly within divisions 2 and 3. Here, upon the showing made, the legal remedy is inadequate because the trespass is continuous and the defendants openly assert that they intend to remain in the possession of the premises, to which they have no right of occupancy; and the defendants are insolvent.

"Whether an injunction should be issued to enjoin trespass should be tested in the light of the adequacy of the legal remedy. (*Sankey* v. *St. Mary's Female Academy*, 8 Mont. 265, 21 Pac. 23; *Lee* v. *Watson*, supra; *Musselshell Cattle Co.* v. *Woolfolk*, supra; 5 Pomeroy's Equity Jurisprudence (2d ed.), sec. 1907.) Repetition of the trespass, necessitating a multiplicity of actions, in itself may render the legal remedy inadequate. (Note to *Sanders* v. *Boone*, supra; *Thrasher* v. *Hodge*, supra; *Musselshell*

*Cattle Co.* v. *Woolfolk,* supra; 5 Pomeroy's Equity Jurisprudence (2d ed.), sec. 1910.)

"Upon plaintiff's showing the insolvent defendants had continually trespassed upon plaintiff's premises at least since April 22d, and were threatening to continue such trespasses indefinitely, to plaintiff's great damage. The occupancy of the defendants here is like unto that of a servant who refuses to remove from the premises after he is discharged by the master. (See *Mackenzie* v. *Minis,* 132 Ga. 323, 63 S. E. 900, 905, 23 L. R. A. (n. s.) 1083, 16 Ann. Cas. 723. In the case last cited it is cogently· set forth that it is better for the courts to interfere by injunction when a trespasser boldly asserts his intention to continue in possession, than to cast upon the owner of the premises a resort to force, likely to result in physical combat. The court quoted from *Borough of Stamford* v. *Stamford Horse R. Co.,* 56 Conn. 381, 15 Atl. 749, 1 L. R. A. 375, as follows: 'When the choice is between redress or prevention of injury by force and by peaceful process, the law is well pleased if the individual will consent to waive his right to the use of force and await its action. Therefore, as between force and the extraordinary writ of injunction, the rule will permit the latter.' "

We find no material error in the record, and the decision is therefore affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and ANGSTMAN concur.